United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEVI JONES, ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> CONAGRA FOODS, INC., <br><br> Defendant. | No. C 12-01633 CRB <br><br> **ORDER GRANTING IN PART MOTION TO DISMISS** |

Before the Court is Defendant's Motion to Dismiss Amended Complaint ("MTD") (dkt. 32), which alleges that several of Defendant's products contained deceptive and misleading labels, violating numerous California and federal laws. As discussed below, the Court GRANTS in part, and DENIES in part, Defendant's motion.

## I.   BACKGROUND

Plaintiffs Levi Jones, Christine Sturges, and Edd Ozard, on behalf of themselves and others similarly situated, filed this class action suit against Defendant ConAgra Foods, Inc. on April 2, 2012, (dkt. 1), and subsequently filed an Amended Complaint ("AC") on July 2, 2012, (dkt. 27). Plaintiffs allege that Defendant's website and numerous products of Defendant's, including PAM cooking spray, Hunt's canned tomato products, and Swiss Miss cocoa, contain deceptive and misleading labeling information. Id.

Specifically, Defendant's allegedly deceptive and misleading practices include

(1) labeling food products as 100% natural, when they contain petrochemicals; (2) labeling food products as 100% natural, when they contain chemical preservatives, synthetic chemicals, added artificial color and other artificial ingredients; (3) labeling food products as "organic" or "certified organic," when they contain disqualifying ingredients; (4) failing to use the common or usual name of ingredients or failing to list the ingredients in the correct order; (5) falsely representing food products to be "free of artificial ingredients and preservatives;" (6) making unlawful nutrient content claims; (7) making unlawful antioxidant claims; (8) falsely representing foods to be fresh or have a "fresh taste;" and (9) making unlawful health claims. Id. ¶ 3.

Plaintiffs assert that they "care about the nutritional content of food and seek to maintain a healthy diet." Id. ¶ 225. Plaintiffs allege that, throughout the class period, they and other class members purchased Defendant's misbranded products, reasonably relying on the health and content claims on Defendant's package labeling and website. Id. ¶ 226. Had they known that Defendant's products were mislabeled, Plaintiffs assert that they would not have purchased the products. Id. ¶¶ 97, 120, 127, 143, 164. Further, because of Defendant's misleading and deceptive practices, Plaintiffs allege that they were harmed when they paid an "unwarranted premium" for Defendant's mislabeled products. See, e.g., id. ¶¶ 100, 121, 144, 196, 208.

Based on the above alleged practices, Plaintiffs assert causes of action based on (1) California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*; (2) California's False Advertising Laws ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*; (3) Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*; (4) restitution based on unjust enrichment/quasi-contract; (5) Song-Beverly Act, Cal. Civ. Code § 1790, *et seq.*; and (6) Magnuson-Moss Act, 15 U.S.C. § 2301, *et seq.* See generally, AC. Defendant filed this Motion to Dismiss Amended Complaint on August 17, 2012, seeking to dismiss all of the claims in the AC.

//

//

## II. LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Dismissal is proper where a cause of action fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Rule calls for sufficient factual matter to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). On a motion to dismiss, all well-pleaded allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. Wyler-Summit P'ship v. Turner Broad. Sys., Inc., 135 F.3d 658, 661 (9th Cir. 1998). A complaint should not be dismissed without leave to amend unless it is clear that the claims could not be saved by amendment. Swartz v. KPMG LLP, 476 F.3d 756, 760 (9th Cir. 2007).

Under Rule 9(b), the "circumstances constituting fraud" or any other claim that "sounds in fraud" must be stated "with particularity." Fed. R. Civ. P. 9(b); Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103-04 (9th Cir. 2003). To comply with Rule 9(b), a plaintiff must plead with particularity the time and place of the fraud, the statements made and by whom, an explanation of why or how such statements were false or misleading, and the role of each defendant in the alleged fraud. KEMA, Inc. v. Koperwhats, No. C-09-1587 MMC, 2010 WL 3464737, at *3 (N.D. Cal. Sept. 1, 2010). In short, the complaint must include the "who, what, when, where, and how." Cooper v. Pickett, 137 F.3d 616, 627 (1997) (internal quotations omitted).

## III. DISCUSSION

Defendant moves to dismiss the AC on the grounds that (A) Plaintiffs' claims are preempted by federal law; (B) the FDA has primary jurisdiction over certain claims; (C) Plaintiffs fail to state a claim upon which relief may be granted and have not established standing; (D) Plaintiffs fail to plead with particularity in accordance with Rule 9(b); and (E) Plaintiffs' warranty and unjust enrichment claims fail as a matter of law. See generally, MTD. This Order will address each argument in turn.

3

### A. Preemption

Defendant asserts that Plaintiffs' claims are preempted by (1) the Organic Foods Product Act ("OFPA"); (2) the National Labeling and Education Act ("NLEA"); and (3) the Federal Food, Drug, and Cosmetic Act ("FDCA").

#### 1. OFPA preemption

Defendant asserts that Plaintiffs' organic labeling claims are preempted by the OFPA. MTD at 4-5. Relying on In re Aurora Dairy Corp. Organic Milk Marketing and Sales Practices Litigation, 621 F.3d 781, 796 (8th Cir. 2010), Defendant asserts that the Eighth Circuit affirmed a district court's dismissal of certain organic claims because "'claims that [manufacturers and retailers] sold [a product] as organic when in fact it was not organic are preempted because they conflict with the OFPA.'" MTD at 4 (quoting In re Aurora, 651 F.3d at 781).

Defendant takes this quote out of context. In In re Aurora, the Eighth Circuit upheld dismissal of claims involving the organic certification of a dairy farm. 651 F.3d at 796 ("Claims Attacking Aurora's Certification are Preempted"). The Eighth Circuit held that "Congress did not expressly preempt state tort claims, consumer protection statutes, or common law claims" involving the OFPA. Id. at 792 (emphasis added). Judge Beeler recently agreed, analyzing In re Aurora at length and holding that "OFPA expressly preempts state certification requirements but does not expressly bar state law claims that do not conflict with OFPA's provisions . . . so long as the compositional requirements at issue do not conflict with those set forth in OFPA." Brown v. Hain Celestial Grp., Inc., No. C 11-03082 LB, 2012 WL 3138013, at *9 (N.D. Cal. Aug. 1, 2012) motion to certify appeal granted, No. C 11-03082 LB, 2012 WL 4364588 (N.D. Cal. Sept. 24, 2012).

Defendant correctly notes that the Brown decision involved the labeling of cosmetics, not food, but incorrectly argues that this meaningfully distinguishes Brown. See Reply (dkt. 77) at 2. Judge Beeler clearly concluded that the "OFPA covers cosmetics" before she analyzed preemption. Brown, 2012 WL 313801, at *8. Thus, Brown's preemption analysis applies generally to products governed by the OFPA, and not only to cosmetics.

4

Here, the claims at issue do not involve organic certification of Defendant's products; rather, the claims are exactly the type of state claims the courts in In re Aurora and Brown concluded are <u>not</u> expressly preempted. Accordingly, Plaintiffs' organic claims are not preempted to the extent that the state claims do not conflict with the OFPA.

### a. Conflict preemption

Although Plaintiffs' claims are not expressly preempted by the OFTA, their state law claims still must not conflict with the OFPA. Pursuant to OFPA, the USDA created the National Organic Program ("NOP") to establish the national standards for organic products. See 65 Fed. Reg. 80,548-10 (Dec. 21, 2000) (codified as 7 C.F.R. § 205). These regulations govern the use of the term "organic" in labeling and marketing agricultural products, 7 C.F.R. § 205.300, require "that agricultural products labeled as organic be certified as meeting the requirements of the regulations by an agent accredited by the USDA, and forbid[] the labeling as organic of products that have not been certified as such," Brown, 2012 WL 3138013, at *3 (citing 7 U.S.C. §§ 6514(a), 6515, 6519).

California has enacted laws for organic labeling that incorporate the NOP regulations. Section 110820 of the California Health and Safety Code provides,

> [N]o product shall be sold as organic pursuant to this article unless it is produced <u>according to regulations promulgated by the NOP</u>, and consists entirely of products manufactured only from raw or processed agricultural products except as follows:
> (a) Water, air, and salt may be added to the product.
> (b) Ingredients other than raw or processed agricultural products may be added to the product if these ingredients include nonagricultural substances or nonorganically produced agricultural products produced in a manner consistent with, or which are on the national list adopted by the United States Secretary of Agriculture <u>pursuant to Section 6517 of the NOP</u> and do not represent more than 5 percent of the weight of the total finished product, excluding salt and water.

Cal. Health & Safety Code § 110820 (emphasis added). Further, section 110830 provides, "[n]o product handled, processed, sold, advertised, or offered for sale in this state, shall be sold as organic unless it also is prominently labeled and invoiced with similar terminology <u>as set for by regulations promulgated by the NOP</u>." (emphasis added). Finally, section 110956(a) states that "[a]ll organic product regulations and any amendments to those regulations adopted <u>pursuant to the NOP</u>, that are in effect on the date this bill is enacted or that are adopted after that date shall be the organic product regulations of this state."

5

(emphasis added).

As the California statutes do not impose any relevant additional requirements than those under the OFPA, Plaintiffs' organic claims are not preempted, and the Court DENIES Defendant's MTD on the grounds that Plaintiffs' OFPA claims are preempted.[1]

### 2. NLEA preemption

The FDCA gives the FDA the responsibility to protect the public health by ensuring that "foods are safe, wholesome, sanitary, and properly labeled," 21 U.S.C. § 393(b)(2)(A), and the FDA has promulgated regulations pursuant to its authority. See e.g., 21 C.F.R. § 101.1-108. There is no private right of action under the DCA; instead, the FDA enforces the FDCA and its regulations through enforcement actions. See 21 C.F.R. § 332; 21 C.F.R. § 7.40.

In 1990, Congress passed the NLEA to specifically address certain food and beverage labeling requirements, such as requiring the identification of artificial flavors on the label, 21 U.S.C. § 343(k), and the identification of "imitation" products or ingredients, 21 U.S.C. § 343(c). The NLEA is codified as part of the FDCA.

#### a. Express preemption

Defendant asserts that Plaintiffs' claims are preempted by the express preemption provisions of the NLEA, set forth in 21 U.S.C. § 343-1(a). See Reply at 5-6. However, "[w]here a requirement imposed by state law effectively parallels or mirrors the relevant sections of the NLEA, courts have repeatedly refused to find preemption." Chacanaca v. Quaker Oats Co., 752 F. Supp. 2d 1111, 1118 (N.D. Cal. 2010) (citing New York State Rest. Ass'n, 556 F.3d at 123; Chavez v. Blue Sky Natural Beverage Co., 268 F.R.D. 365, 370 (N.D. Cal. 2010)). The FDA itself appears to endorse this approach. See Final Rule, 60 Fed. Reg. 57076, 57120 (Nov. 13, 1995) ("[I]f the State requirement does the same thing that the Federal law does . . . then it is effectively the same requirement as the Federal requirement. . . . [T]he only State requirements that are subject to preemption are those that are affirmatively

---

[1] As noted at the motion hearing, the Court also rejects Defendant's argument that a rival enforcement scheme imposes additional requirements that impose a conflict, as that exception would swallow the rule.

6

different from the Federal requirements on matters that are covered by section 403A(a) of the act."). Id.

Thus, Plaintiffs' claims will not be expressly preempted by the NLEA to the extent that the state laws they rely on are effectively the same as the NLEA.

### (b) Conflict preemption

As with the OFPA, Plaintiffs' state law claims are not preempted by the NLEA, so long as the state laws do not conflict with the NLEA. This Order will analyze conflict preemption for each category of claims Defendant asserts is preempted.

### (1) Antioxidant claims

Plaintiffs' antioxidants claims are not preempted. California has enacted laws identical to the corresponding FDA requirements regarding antioxidant claims. Section 110670 of the California Health and Safety Code provides: "Any food is misbranded if its labeling does not conform with the requirements for nutrient content or health claims as set forth in Section 403(r) (21 U.S.C. Sec. 343(r)) of the federal act and the regulations adopted pursuant thereto." Because the California statute incorporates the NLEA by reference, the statute is "effectively the same" as the federal law, and Plaintiffs' antioxidant claims are not preempted. See Chacanaca, 752 F. Supp. 2d at 1118.

### (2) Ingredient list/propellant claims

The claims regarding ingredient lists and propellants are likewise not preempted. Under the NLEA, a food is misbranded "[u]nless its label bears . . ., in case it is fabricated from two or more ingredients, the common or usual name of each such ingredient. . . ." 21 U.S.C. § 343(i)(2). The California provision parallels this statute, providing that "[a]ny food fabricated from two or more ingredients is misbranded unless it bears a label clearly stating the common or usual name of each ingredient. . . ." See Cal. Health & Safety Code § 110725(a). These statutes are substantially the same, and thus Plaintiffs' claims are not preempted.[2]

---

[2] Whether "propellants" is the common or usual name of the ingredient, see AC ¶¶ 112; MTD at 8-11, is a factual dispute that can be addressed at a different stage in the proceedings.

United States District Court
For the Northern District of California

7

### (3) Spices

Defendant contends that Plaintiffs' claims regarding rosemary extract are preempted because they seek to impose an additional requirement not contained in the applicable federal regulation, namely that "rosemary extract" must be labeled as a preservative. MTD at 11. Defendant states that it was not required to list the ingredient "rosemary extract" as "rosemary extract (preservative)" because 21 C.F.R. § 101.22(a)(5) explicitly states that chemical preservatives do not include "spices, or oils extracted from spices." Id.

Plaintiffs dispute that this claim is preempted because they maintain that rosemary extract is not a spice or an oil extracted from a spice, and thus they are not seeking to impose an additional requirement on Defendant. Opp'n (dkt. 662) at 10. While the actual make-up of "rosemary extract" is disputed, Plaintiffs have pleaded this claim using California law that does not conflict with the federal law, and thus this claim is not preempted either.[3]

### (4) Other preservatives

Finally, Defendant contends that Plaintiffs' claims that Defendant's products should have identified citric acid and calcium chloride as "preservatives" are preempted because "[n]owhere has the FDA suggested that these ingredients should be regarded or identified as preservatives." MTD at 11-12. However, this argument is irrelevant to the issue of preemption. Both the California law and federal regulations require a food label to disclose ingredients being used as preservatives, see Cal. Health & Safety Code § 110740; 21 C.F.R. § 101.22, and the AC asserts that these ingredients are used as preservatives, AC ¶ 136. The two statutes impose substantially the same requirements, and thus Plaintiffs' other preservatives claims are not preempted by federal law.

### 2. FDCA preemption of state tort law claims

Defendant also asserts that Plaintiffs' claims are preempted by the FDCA because the FDCA may not be enforced through state tort law, unless the private tort claim imposes obligations identical to the obligations under the FDCA. MTD at 12. Defendant further

---

[3] Whether rosemary extract is in fact a spice or an oil is a factual dispute that can also be addressed at a different stage in the proceedings.

8

1 argues that the requirements Plaintiffs seek to impose are not identical to those imposed by
2 the FDCA, but are based on Plaintiffs' own interpretations of the FDCA "unsupported by any
3 FDA statement or action." Id.

4 As discussed at length above, the California statutes on which Plaintiffs rely are often
5 identical to the federal law. On the face of the AC, Plaintiffs' interpretation of the various
6 laws do not appear to impose obligations on Defendant different from those required by
7 federal law. Accordingly, the AC will not be dismissed on this ground.

### B. Primary jurisdiction

"The primary jurisdiction doctrine allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency." Clark v. Time Warner Cable, 523 F.3d 1110, 1114 (9th Cir. 2008). "[T]he doctrine is a 'prudential' one, under which a court determines that an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry, rather than by the judicial branch." Id.

A court traditionally weighs four factors in deciding whether to apply the primary jurisdiction doctrine: "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity that (4) requires expertise or uniformity in administration." Syntek Semiconductor Co., Ltd. v. Microchip Tech., Inc., 307 F.3d 775, 781 (9th Cir. 2002). Application of the primary jurisdiction doctrine is not appropriate here as Defendant has demonstrated neither a need for uniformity nor for the FDA's expertise.

First, this Court has previously declined to apply the doctrine to a case involving "natural" claims similar to Plaintiffs' "natural" claims here. See Lockwood v. ConAgra Foods, Inc., 597 F. Supp. 2d 1028, 1034-35 (N.D. Cal. 2009). This Court reasoned that various parties have repeatedly asked the FDA to adopt formal rulemaking to define the word natural and the FDA has declined to do so because it is not a priority and the FDA has limited resources. Id. Further, when the FDA considered the term "natural," "it was aware

9

1 of and had reviewed state regulation of the use of the term, yet it made no mention of the
2 need for uniformity." Id. at 1034. The FDA's inaction with respect to the term "natural"
3 implies that the FDA does not believe that the term "natural" requires "uniformity in
4 administration."[4] See Syntek Semiconductor, 307 F.3d at 781. Accordingly, courts need not
5 refer such claims to the FDA pursuant to the primary jurisdiction doctrine. Lockwood, 597
6 F. Supp. 2d at 1035.

7 Defendant's further argument that this case requires the FDA's "extensive expertise in
8 regulating precisely the technical issues on which Plaintiffs base their claims," see MTD at
9 18, does not bear out. Notwithstanding Defendant's discussion at the motion hearing of
10 preservatives and firming agents, the Court concludes that this case is far less about science
11 than it is about whether a label is misleading. Plaintiff's allegations of deceptive labeling do
12 not require the expertise of the FDA to be resolved in the courts, see Syntek Semiconductor,
13 307 F.3d at 781, as "every day courts decide whether conduct is misleading," Lockwood,
14 597 F. Supp. 2d at 1035; Reid v. Johnson & Johnson, No. 11CV1310 L BLM, 2012 WL
15 4108114, at *11 (S.D. Cal. Sept. 18, 2012). "The FDA's expertise . . . is not necessary to
16 determine whether the labels are misleading. The reasonable-consumer determination and
17 other issues involved in Plaintiff's lawsuit are within the expertise of the courts to resolve."
18 See Delacruz v. CytoSport, No. 11-3532, 2012 WL 2563857, at *10 (N.D. Cal. June 28,
19 2012). Accordingly, the doctrine of primary jurisdiction does not bar Plaintiffs' claims under
20 the FDCA or NLEA.
21 //
22 //
23

---

24 [4] This case is therefore distinguishable from Taradejina et al. v. General Mills Inc. et al., Case
25 No. 12-cv-00993-SRN-LIB (dkt. 89), in which a court in the District of Minnesota applied the primary jurisdiction doctrine in a case about the standard of identity of Greek yogurt. There, the FDA had issued a Proposed Rule on that precise subject, which was pending, and the court determined that a decision
26 by the FDA would ensure national uniformity in labeling as to what was (and what was not) Greek yogurt. Here, in contrast, the FDA has shown no intention of setting out a national standard.
27 Nonetheless, this case is also distinguishable from Astiana, et al. v. The Hain Celestial Group, Inc., et al., Case No. 4:11-cv-06342-PJH (dkt. 88), in which Judge Hamilton specifically noted the complete
28 absence of any FDA guidance on the word "natural" in the cosmetics complex, contrasting it to a policy statement the FDA had made in the context of food.

10

### C. Failure to state a claim

Defendant asserts that Plaintiffs have failed to state a claim in their first six causes of action[5] because Plaintiffs have not alleged the elements of a consumer fraud claim: falsity, reliance, and injury.

However, deceptive labeling claims under the UCL, CLRA, and FAL are evaluated by whether a "reasonable consumer" would be likely to be deceived. Williams v. Gerber Prods. Co., 552 F.3d 934, 938 (9th Cir.2008) (citing Freeman v. Time, Inc., 68 F.3d 285, 289 (9th Cir.1995)). The California Supreme Court has recognized "that these laws prohibit not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." Id., 552 F.3d at 938 (quoting Kasky v. Nike, Inc., 45 P.3d 243, 250 (Cal. Ct. App. 2002)) (internal quotations omitted) (emphasis added).

Generally, the question of whether a business practice is deceptive presents a question of fact not suited for resolution on a motion to dismiss. See id., 552 F.3d at 938. However, the court may in certain circumstances consider the viability of the alleged consumer law claims based on its review of the product packaging. See Werbel ex rel. v. Pepsico, Inc., No. C 09-04456 SBA, 2010 WL 2673860, at *3 (N.D. Cal. July 2, 2010). "Thus, where a court can conclude as a matter of law that members of the public are not likely to be deceived by the product packaging, dismissal is appropriate." Id. (citing Sugawara v. Pepsico, Inc., No. 208CV01335-MCEJFM, 2009 WL 1439115, at *3-4 (E.D. Cal. May 21, 2009) (finding that the packaging for Cap'n Crunch cereal and its use [of] the term "Crunch Berries" was not misleading); Videtto v. Kellogg USA, No. 2:08-cv-01324-MCE-DAD, 2009 WL 1439086, at *2 (E.D. Cal. May 21, 2009) (dismissing UCL, FAL and CLRA claims based on allegations that consumers were misled into believing that "Froot Loops" cereal contained "real,

---

[5] Plaintiffs' first three claims allege violations of each prong of the UCL. The fourth and fifth claims allege violations of Cal. Bus. & Prof. code § 17500, *et seq.* for misleading and deceptive advertising, and untrue advertising. Plaintiffs' sixth claim is brought pursuant to the Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* ("CLRA").

11

nutritious fruit"); McKinnis v. Kellogg USA, No. CV 07-2611 ABC (Rcx), 2007 WL 4766060, at *3-4 (C.D. Cal. May 21, 2007) (same)).

### 1. Falsity

Defendant moves to dismiss claims concerning "freshness," antioxidants, and website statements concerning health issues because Plaintiffs have not pleaded falsity. MTD at 20. As discussed above, Plaintiffs do not necessarily need to plead falsity, but may plead that the public is likely to be deceived by the deceptive practice.

Plaintiffs have pleaded falsity regarding the antioxidant claims. For example, Plaintiffs state that Defendant's antioxidant claims "are false" because by using antioxidant "terms improperly, Defendant was, in effect, falsely asserting that the products met the minimum nutritional thresholds for the claims in question. . . ." AC ¶ 155 (emphasis added). The antioxidant claims will not be dismissed on this ground.

As for the "freshness" claims, Plaintiffs have properly pleaded that a "reasonable consumer" would be "misled into purchasing Defendant's products with false and misleading labeling statements and ingredient descriptions." Id. ¶¶ 191-94 (emphasis added). Whether a reasonable customer would in fact find this information deceptive is a question not properly addressed on a motion to dismiss.

Defendant also asserts that Plaintiffs' challenges to Defendant's website health claims should be dismissed. MTD at 19. Plaintiffs do assert that they were "misled into the belief that such [health] claims were legal," and thus they "were deceived." AC ¶ 206. However, Plaintiffs have not sufficiently alleged that the information on the web was false, or that a reasonable consumer would be deceived by the web claims, only that the Plaintiffs were deceived by the web claims. Id.

Accordingly, the Court DISMISSES with leave to amend Plaintiffs' first through sixth claims, only to the extent that they involve Defendant's alleged web claims, for failure to plead that the reasonable consumer would likely be deceived by the representations.

//
//

12

### 2. Reliance

Defendant moves to dismiss all of Plaintiffs' claims for failure to adequately allege reliance. MTD at 20-22. As discussed, the proper standard is whether a reasonable consumer is likely to be deceived by the offending statements.

First, Defendant asserts that Plaintiffs have not alleged, and cannot allege, reliance based on Hunt's product's claims that the products are "natural," because the allegedly unnatural ingredients were "<u>plainly disclosed</u> in the ingredient list." MTD at 20. However, the Ninth Circuit has stated:

> We disagree . . . that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box. . . . We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception. Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging.

<u>Williams</u>, 552 F.3d at 939-40. In light of <u>Williams</u>, Defendant's argument fails. At any rate, Plaintiffs state that they did read the ingredients list, AC ¶ 230, but Plaintiffs base their claims, in part, on the fact that they were deceived because the ingredients themselves were mislabeled.

Defendant further states that Plaintiffs have not, and cannot, allege that the products were improperly labeled "natural," even though they contained citric acid and calcium chloride, because the FDA has recently stated that citric acid is natural. <u>See</u> MTD at 20; Request for Judicial Notice in Support of MTD ("RJN") (dkt. 34), Exh. E.[6] Defendant cannot rely on this argument to dismiss Plaintiffs' "natural" claims. First, Defendant does not dispute that calcium chloride is unnatural. Second, the letter from the FDA that Defendant submitted states that "naturally-derived citric acid" is consistent with labeling a product "natural." <u>See</u> RJN, Exh. E. Without further evidence that Defendant's products

---

[6] Exhibit E is properly judicially noticeable; it is a letter to Martin J. Hahn at Hogan Lovells US LLP from the FDA. <u>See</u> Fed. R. Evid. 201; <u>Batwin v. Occam Networks, Inc.</u>, No. CV 07-2750 CAS (SHX), 2008 WL 2676364, at *2 n.3 (C.D. Cal. July 1, 2008) (taking judicial notice of a correspondence letter from the SEC to defense counsel).

included the permissible citric acid, it would be improper to dismiss Plaintiffs' claims on this matter.

Defendant's Swiss Miss product stated that "Natural Antioxidants Are Found in Cocoa," AC ¶ 229, while Hunt's tomato products stated that "The Antioxidants Vitamin C & Lycopene are found naturally in tomatoes," Id. ¶ 227. Plaintiffs claim that they "relied on [] unlawful antioxidant claims when making their purchase decisions and were misled because they erroneously believed the implicit misrepresentation that the tomato and cocoa products that they were purchasing met the minimum nutritional threshold to make such antioxidant claims." Id. ¶ 181. Defendant argues that, although Plaintiffs may have had detailed knowledge of the FDA regulations that set out the minimum nutritional threshold to make antioxidant claims, a reasonable customer would likely not, and thus Plaintiffs cannot allege that a reasonable consumer relied on the antioxidant claims. MTD at 21.

It would be improper to dismiss the antioxidant claims at this point in the proceedings because, contrary to Defendant's assertions, this is not a situation where the Court can conclude as a matter of law that a reasonable customer would not be deceived by the antioxidant claims (as with "Crunch Berries"). Accordingly, Plaintiffs' allegations that they relied on Defendant's antioxidant claims in making their purchases are sufficient.

### 3. Injury and standing

Plaintiffs have alleged sufficient injury and thus have standing to bring these claims. Plaintiffs argue that Degelmann v. Advanced Med. Optics Inc., 659 F.3d 835, 840 (9th Cir. 2011), held that allegations like Plaintiffs' are sufficient in this Circuit to satisfy standing. Opp'n at 20-23. In Degelmann, the court held that:

> For each consumer who relies on the truth and accuracy of a label and is deceived by misrepresentations into making a purchase, the economic harm is the same: the consumer has purchased a product that he or she paid more for than he or she otherwise might have been willing to pay if the product had been labeled accurately. This economic harm – the loss of real dollars from a consumer's pocket – is the same whether or not a court might objectively view the products as functionally equivalent.

659 F.3d at 839-40 (quoting Kwikset Corp. v. Superior Court, 51 Cal. 4th 310, 329 (2011)).

Plaintiffs are correct. Degelmann held that evidence that plaintiffs would not have purchased a product if the product had been labeled accurately is sufficient to establish injury under California's consumer laws. Id. at 840. Here, in accordance with Degelmann, Plaintiffs have sufficiently alleged that they paid an "unwarranted premium" for the allegedly mislabeled products. See, e.g., AC ¶¶ 100, 121, 144, 196, 208. Further, Plaintiffs alleged that had they been aware that the labeling was inaccurate, they would not have purchased Defendant's products. See, e.g., id. ¶¶ 97, 120, 127, 143, 164. Thus, Plaintiffs have sufficiently alleged injury and have standing to bring their claims.

### D. Rule 9(b)

Defendant also moves to dismiss all of Plaintiffs' claims because they have not complied with Rule 9(b). MTD at 23-24. Plaintiffs assert that they have properly pleaded the "who, what, when, where, and how" to satisfy Rule 9(b). Specifically, Plaintiffs state that:

> [1] The "who" is Defendant ConAgra. AC ¶¶ 2-4.
> [2] The "what" includes six discrete types of unlawful and deceptive claims by ConAgra: (1) claims that its products are "100% natural" (Id. ¶¶ 52-85); (2) claims that its products are "organic" and "certified organic" (Id. ¶¶ 86-100); (3) labeling of its products' ingredients by terms other than the common names of those ingredients (Id. ¶¶ 101-121); (4) listing of its products' ingredients in unlawful order (Id. ¶¶ 122-128); (5) deceptive claims that its products are "free of artificial ingredients and preservatives" (Id. ¶¶ 129-144); (6) certain nutrient content claims (Id. ¶¶ 145-165); (7) certain antioxidant claims (Id. ¶¶ 166-182); (8) "fresh" claims (Id. ¶¶ 183-196); and (9) certain health claims (Id. ¶¶ 197-208).
> [3] The "when" is "since April 2008, and throughout the Class Period." Id. ¶ 226.
> [4] The "where" is ConAgra's package labels and website.
> [5] The "how the statements were misleading" is that: (1) ConAgra violated the Sherman Law in a number of specific ways, on its website and on the labels of a laundry list of its products, as described herein and in the Amended Complaint; (2) Plaintiffs purchased ConAgra's products reasonably relying, in substantial part, on ConAgra's misrepresentations; and (3) Plaintiffs were thus deceived by ConAgra's product labels and website.

Opp'n at 24 n.11 (emphasis added).

Another court in this district found a substantially similar pleading to be sufficient to satisfy Rule 9(b). See Astiana v. Ben & Jerry's Homemade, Inc., No. C 10-4387 PJH, 2011 WL 2111796, at *6 (N.D. Cal. May 26, 2011). There, the court

15

1 found a complaint sufficient that alleged, (1) the "who" was defendants (2) the
2 "what" was the statement that product was "all natural;" (3) the "when" as "since at
3 least 2006," and "throughout the class period;" (4) the "where" was on the product
4 labels; (5) the "how the statements were misleading" is the allegation that
5 defendants did not disclose that the product contained synthetic ingredients. Id.

6 However, Defendant argues that other courts have dismissed similar claims
7 where plaintiffs alleged that they purchased the products repeatedly during the class
8 period, but did not allege specific dates on which the purchases were made. See
9 MTD at 23-24; Yumul v. Smart Balance, Inc., 733 F. Supp. 2d 1117, 1124 (C.D.
10 Cal. 2010); Edmunson v. Procter & Gamble Co., No. 10-CV-2256-IEG NLS, 2011
11 WL 1897625, at *5 (S.D. Cal. May 17, 2011) ("Plaintiff does not allege when
12 during the class period, where, how many, or how many times he purchased [the
13 products] or was exposed to the alleged misrepresentations.").

14 In general, the Court does not agree with Defendant that the pleadings lack
15 the particularity required to satisfy Rule 9(b) as to the "when and where;" Plaintiffs'
16 allegations that they bought the products in California since April 2008 are sufficient
17 to put Defendant on notice of the claims against it. See AC ¶ 226. However, the
18 Court does agree with Defendant with respect to the PAM products because
19 Defendant has recently changed the label to include "(preservative)" after rosemary
20 extract. Id. ¶ 138. It is necessary to know more specifically when Plaintiffs
21 purchased PAM products that did not include "(preservative)." Accordingly, the
22 Court DISMISSES with leave to amend Plaintiffs' claims for failure to plead with
23 particularity the "when and where" required by Rule 9(b) as to the PAM products.

24 Further, Plaintiffs do not provide details of exactly which products they
25 purchased. For example, Plaintiffs state that they purchased Hunt's canned
26 tomatoes products, including "Hunt's Petite Diced Tomatoes in a 14.5 oz can and
27 other Hunt's canned tomato products such as its tomato paste in an 8 oz. can." Id. ¶
28 227. The Court therefore DISMISSES with leave to amend Plaintiffs claims to the

16

extent the products are not specifically identified, such as "other Hunt's canned tomato products."

Finally, Plaintiffs have not pleaded with specificity which Hunt's products contained citric acid and/or calcium chloride. Plaintiffs state that "[t]he back panel of ConAgra's product labels for Hunt's canned tomato products lists [sic] citric acid as an ingredient, and sometimes also list calcium chloride," and specifically notes that Hunt's Diced Tomatoes lists both ingredients. Id. ¶ 65. However, Plaintiffs do not state whether the Hunt's tomato paste in an 8 oz. can that they purchased contained only citric acid, or both citric acid and calcium chloride. This information is necessary because Defendant has submitted a copy of labels from Hunt's tomato paste and Hunt's tomato sauce that do not contain calcium chloride. See RJN, Exhs. F & G.[7] The Court therefore DISMISSES with leave to amend Plaintiffs' claims regarding Hunt's tomato paste in an 8 oz. can for failure to specifically plead whether citric acid, or both citric acid and calcium chloride.

### E. Warranty and unjust enrichment claims

Finally, Defendant argues that Plaintiffs' warranty and unjust enrichment claims fail as a matter of law. See MTD at 24-25.

#### 1. Warranty claims

The Court DISMISSES without leave to amend Plaintiffs' eighth (Song-Beverly Act) and ninth (Magnuson-Moss Act) claims as a matter of law. Under the Magnuson-Moss Act claim, Plaintiffs asserts that Defendant's products include written warranties, id. ¶¶ 329-38, which the Act defines as

> any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time,

---

[7] The Hunt's tomato paste label is properly judicially noticeable because it is referenced in the complaint. See AC ¶ 130; Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007) (holding that a court may "consider a [document] referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned"). The Hunt's tomato sauce label is arguably referenced in the complaint as "other Hunt's canned tomato products." See AC ¶ 130.

17

15 U.S.C. § 2301(6)(A) (emphasis added).

In Astiana v. Dreyer's Grand Ice Cream, Inc., No. C-11-2910 EMC, 2012 WL 2990766, at *3 (N.D. Cal. July 20, 2012) motion to certify appeal denied, No. C-11-2910 EMC, 2012 WL 4892391 (N.D. Cal. Oct. 12, 2012), Judge Chen recently dismissed a similar warranty claims relying on numerous courts' holdings that product descriptions, such as "all natural" labels, "do not constitute warranties against a product defect." Astiana, 2012 WL 2990766, at *3 (citing Littlehale v. The Hain Celestial Group, Inc., No. C 11–6342 PJH (dkt. 48) (N.D. Cal. July 2, 2012) (Order at 1) (rejecting "plaintiffs' argument that the statements 'Pure Natural' and 'All Natural' are affirmations or promises that the products are defect free"; finding instead that "the statements are mere product descriptions" because "[t]o accept plaintiffs' argument would be to transform most, if not all, product descriptions into warranties against a defect"); In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig., MDL-1703, 2006 WL 1443737, at *4 (N.D. Ill. May 17, 2006) (agreeing with Sears that the phrase "'Made in USA' does not constitute a 'written warranty' because it does not affirm or promise that the material or workmanship is defect-free"; noting that the phrase "arguably relate[s] to the 'nature' of the material [but] fails to satisfy the defect-free . . . prong" as [t]he phrase is [simply] a product description that does not inform consumers that the tools are defect-free")).

The Court agrees with Judge Chen's analysis. Since Plaintiffs do not allege, and cannot allege, that the statements on Defendant's labels affirm that the products are "defect free," the Court DISMISSES without leave to amend Plaintiffs' Magnuson-Moss Act claim.

Plaintiffs' claim under the Song-Beverly Act also fails. Plaintiffs allege that Defendant's products contain an express warranty, which the Act defines as "[a] written statement arising out of a sale to the consumer of a consumer good pursuant to which the manufacturer, distributor, or retailer undertakes to preserve or maintain

18

the utility or performance of the consumer good or provide compensation if there is a failure in utility or performance." Cal. Civ. Code § 1791.2 (emphasis added). The Act defines a "consumer good" as "any new product or part thereof that is used, bought, or leased for use primarily for personal, family, or household purposes, except for . . . consumables." Id. § 1791(a) (emphasis added).

Defendant argues that this claim fails because it did not "undertake to preserve or maintain the utility" of any product. MTD at 25. However, the claim fails for a more fundamental reason not argued by Defendant. See MTD at 24-25. Plaintiffs concede that Defendant's products are "consumables," AC ¶ 321, which means "any product that is intended for consumption by individuals," Cal. Civ. Code § 1791(d). Since Cal. Civ. Code § 1791.2 defines an express warranty as applying only to "consumer goods," and the definition of consumer goods excludes consumables, Plaintiffs have not, and cannot, allege that Defendant created express warranties on its products.

Accordingly, Plaintiffs' eighth and ninth claim are DISMISSED without leave to amend.

### 2. Unjust enrichment claim

Defendant moves to dismiss Plaintiffs' seventh claim for unjust enrichment because, under California law, unjust enrichment "is not a cause of action, just a restitution claim." MTD at 25. However, Plaintiffs seem to base their unjust enrichment "claim" on quasi-contract. See AC ¶¶ 313-17. Judge Hamilton recently refused to dismiss a similar unjust enrichment "claim" in the context of deceptive and misleading labeling. See Ben & Jerry's Homemade, 2011 WL 2111796, at *11 (denying Defendant's motion to dismiss Plaintiffs' unjust enrichment "claim" because "plaintiffs assert[ed] the "claim" of unjust enrichment as part of a claim of restitution based on quasi-contract"). Accordingly, Defendant's motion to dismiss the unjust enrichment claim because it is not a standalone claim is DENIED.

//

19

## IV. CONCLUSION

For the foregoing reasons, the Court DISMISSES <u>with</u> leave to amend Plaintiffs' first through sixth (UCL, FAL, and CLRA) claims for failure to plead with particularity as required under Rule 9(b) to the extent they fail to specify (1) when Plaintiffs purchased PAM cooking sprays; (2) which "other Hunt's canned tomato products" they purchased; and (3) whether citric acid, or both citric acid and calcium chloride are present in each Hunt's tomato product.  The Court DISMISSES <u>with</u> leave to amend Plainitffs' first through sixth (UCL, FAL, and CLRA) claims to the extent that the claims involve Defendant's website claims, for failure to state a claim under 12(b)(6). Any amended complaint shall be filed within <u>thirty (30) days</u> of this Order.  The Court DISMISSES <u>without</u> leave to amend Plaintiffs' eighth (Song-Beverly Act) and ninth (Magnuson-Moss Act) claims as a matter of law.  The Court DENIES Defendant's motion to dismiss as to all other grounds.

**IT IS SO ORDERED.**

Dated: December 17, 2012

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE