United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEVI JONES, et al.,<br>        Plaintiffs,<br>v.<br>CONAGRA FOODS, INC.,<br>        Defendant. | No. C 12-01633 CRB<br>**ORDER DENYING MOTION FOR FEES** |

In this putative class action lawsuit alleging misleading product labels, Plaintiff Edd Ozard ("Ozard"), one of three class representatives, withdrew from the litigation and voluntarily dismissed his claims. Defendant ConAgra Foods, Inc. ("ConAgra") now petitions the Court for an award of attorneys' fees in the amount of $187,172.00, which represents a one-third share of fees incurred defending the litigation. Motion for Attorneys' Fees ("Mot.") (dkt. 140).[1] The Court DENIES ConAgra's Motion.

## I.  BACKGROUND

On April 2, 2012, Plaintiffs Levi Jones ("Jones"), Christine Sturges ("Sturges"), and Ozard, (collectively "Plaintiffs"), on behalf of themselves and others similarly situated, filed a class action suit alleging that ConAgra's website and products—including PAM cooking spray ("PAM"), Hunt's canned tomato products ("Hunt's"), and Swiss Miss cocoa

---

[1] ConAgra requests an additional $3,937.06, which represents one third of costs incurred. See Bill of Costs (dkt. 141) ¶ 3.

("Swiss")—contain deceptive and misleading labeling information. See generally First Amended Complaint ("FAC") (dkt. 27).[2] On December 17, 2012, this Court granted in part ConAgra's Motion to Dismiss ("MTD") the FAC. Order Granting In Part ConAgra MTD (dkt. 91).

On January 15, 2013, Plaintiffs filed a Second Amended Complaint ("SAC"), alleging (1) unlawful, unfair, and fraudulent business acts and practices in violation of California Business and Professions Code section 17200, (2) misleading, deceptive, and untrue advertising in violation of California Business and Professions Code section 17500, (3) violations of the Consumers Legal Remedies Act ("CLRA"), and (4) restitution based on unjust enrichment. See SAC (dkt. 95) ¶¶ 255-321. In response to the SAC, on March 1, 2013, ConAgra served Plaintiffs with document requests and deposition notices. Mot., Hawk Decl. ¶ 2. On March 19, 2013, Plaintiffs informed ConAgra that Ozard wanted to withdraw as a class representative and dismiss his claims. Id. at 4.[3] Sturges's and Jones's depositions went forward in early May, but Ozard did not respond to ConAgra's deposition notice. Id.

On May 20, 2013, Ozard moved to voluntarily dismiss with prejudice his claims against ConAgra and stated that dismissal of his claims "will have no effect on this action" because "Jones and [Sturges] are [still] actively participating as class representatives" in Ozard's claims. See Ozard MTD (dkt. 105) at 3. On May 31, 2013, ConAgra entered a Statement of Non-Opposition to Ozard's MTD, conditioned on Ozard responding to discovery and appearing for a deposition. See Statement of Conditional Non-Opposition (dkt. 108).[4] On August 26, 2013, Ozard's claims against ConAgra were dismissed with

---

[2] Initially, Jones filed the class action suit against ConAgra on April 2, 2012. Compl. (dkt. 1). On July 2, 2012, Sturges and Ozard were added as class representatives. FAC.

[3] Although ConAgra's Motion alleges that March 19, 2013 marks the date when Plaintiffs notified ConAgra that Ozard would be withdrawing as a named plaintiff and class representative, Mot. at 4, Hawk's Declaration states that Plaintiffs did not notify ConAgra of Ozard's dismissal until April 11, 2013, see id., Hawk Decl. ¶¶ 3, 6.

[4] That same day, ConAgra also filed a Motion to Compel Discovery Responses from Ozard. See Motion to Compel (dkt. 106). On July 16, 2013, Magistrate Judge James granted ConAgra's Motion to Compel, which required Ozard to provide written responses, produce documents, and appear for his noticed deposition. See Discovery Order (dkt. 121).

2

1  prejudice.  See Order Granting Ozard's MTD (dkt. 135); see also Stipulation Dismissing
2  Ozard's MTD (dkt. 133) (stipulating that Ozard's claims are dismissed with prejudice but
3  that "ConAgra reserves all rights to seek attorneys' fees, costs, and all other appropriate
4  relief in connection with the dismissal").  ConAgra then filed this motion.

5  **II.    DISCUSSION**

6  ConAgra moves for attorneys' fees and costs pursuant to the CLRA fee-shifting
7  provision, which provides that "[t]he court shall award court costs and . . . [r]easonable
8  attorney's fees . . . to a prevailing defendant upon a finding by the court that the plaintiff's
9  prosecution of the action was not in good faith."  Cal. Civ. Code § 1780(e).  ConAgra alleges
10 that awarding attorneys' fees and costs is appropriate because Ozard did not prosecute his
11 claims in good faith.  See generally Mot.  Ozard opposes the Motion on the grounds that
12 (A) ConAgra is not the prevailing party and (B) Ozard acted in good faith.   Opposition
13 ("Opp'n") (dkt. 155) at 3-15.  The Court agrees with Ozard.[5]

14       **A.    Prevailing Party**

15 ConAgra avers that it became the prevailing party once Ozard's claims were
16 voluntarily dismissed with prejudice.  See Mot. at 2 ("Rule 41(a)(1) 'does not codify any
17 policy that the plaintiff's right to one free dismissal also secures the right to file baseless
18 papers' (in Rule 11 context)" (quoting Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 397-
19 98 (1990)).  Ozard responds that, under the CLRA, a voluntary dismissal does not necessarily
20 confer prevailing party status, because the proper approach is to view  alleged success
21 "through the lens of substance rather than form."  Opp'n at 14-15 (citing Castro v. Super. Ct.,
22 116 Cal. App. 4th 1010, 1019 (2004)).

23 As a threshold matter, the CLRA does not define the term "prevailing party."  See
24 Cal. Civ. Code § 1750 et seq.  But, "[c]ourts construing statutes that contain attorney fees
25 provisions that do not define the term 'prevailing party' . . . have adopted [a] practical
26 approach to determine the recoverability of attorney fees in pretrial voluntary dismissal

---

[5] Because the Court finds that ConAgra is not the prevailing party and that Ozard litigated his claims in good faith, the Court does not reach the reasonableness of attorneys' fees and costs sought.

3

1 cases." Castro, 116 Cal. App. 4th at 1020 (applying a pragmatic approach to determine
2 prevailing party status under California Code of Civil Procedure section 405.38, relying on
3 courts adopting the same approach under California Code of Civil Procedure sections 1942.4,
4 1354, 3344). Under this approach, "the court exercises its discretion to determine the
5 prevailing party by analyzing which party realized its litigation objectives." Id. at 1019; see
6 also Hensley v. Eckerhart, 461 U.S. 424, 433 (1983) ("plaintiffs may be considered
7 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in
8 litigation which achieves some of the benefit the parties sought in bringing suit" (internal
9 quotations and citation omitted)). In assessing litigation success, "courts should respect
10 substance rather than form, and to this extent should be guided by 'equitable
11 considerations.'" Hsu v. Abbara, 9 Cal. 4th 863, 877 (1995)).[6]

12 In Graciano v. Robinson Ford Sales, Inc., 144 Cal. App. 4th 140, 150 (2006), the court
13 applied this pragmatic approach to determine prevailing party status under the CLRA. After
14 the jury found for the plaintiff but before deciding the issue of punitive damages, the parties
15 reached a settlement agreement in which the defendant agreed to pay the plaintiff a
16 significant amount of money in exchange for a voluntary dismissal with prejudice of her
17 other claims, including a claim for injunctive relief. Id. at 147. As a result, the trial court
18 declared the defendant an "equally prevailing party" and reduced the amount of fees to be
19 awarded accordingly. Id. at 151. However, the Court of Appeal reversed, holding that the
20 trial court erred in focusing "on the procedural outcome of those [CLRA] claims, assessing
21 whether [the plaintiff] did not proceed with certain causes of action." Id. at 152. The court
22 refused to confer any level of prevailing party status to the plaintiff's voluntarily dismissed
23 injunctive relief claim, such that it would justify a reduction in attorneys' fees. Id. at 153-54.
24 Rather, the court concluded that "the CLRA cannot reasonably be construed to make a

---

[6] "While entitlement and amount of an attorney fee award is reviewed for abuse of discretion, the legal question of the interpretation of 'prevailing party' under the CLRA . . . is a question of statutory construction that we review independently." Graciano v. Robinson Ford Sales, Inc., 144 Cal. App. 4th 140, 149 (2006) (citing Castro, 116 Cal. App. 4th at 1017).

4

1 defendant in whose favor a dismissal is entered or a defendant where neither party obtains
2 any relief a 'prevailing party.'" Id. at 153.

3   The Graciano decision is significant for two reasons.

4   First, ConAgra reduced its request to one third of the total cost incurred defending the
5 litigation to reflect its limited success against Ozard's claims. Mot. at 2. But the Graciano
6 court explicitly rejected "commingl[ing] its prevailing party analysis with its inquiry into the
7 amount [a party] [i]s entitled to recover." 144 Cal. App. 4th at 153.[5] Like in Graciano,
8 Ozard's voluntary dismissal of his CLRA claims does not confer equal, or even one third,
9 prevailing party status to justify a fee reduction in that amount. See id. at 154 ("it was not
10 proper to rely upon its defendant-as-prevailing-party conclusion to justify a reduction in
11 amount of the fees").

12   Second, similar to Graciano, ConAgra cannot claim prevailing party status "where
13 neither party obtains any relief." Id. at 153. In effect, the Graciano court clarified that
14 determining "prevailing party" status under the CLRA is an entirely different analysis than
15 under a cost statute. Id. (citing Heather Farms Homeowners Assn. v. Robinson, 21 Cal. App.
16 4th 1568, 1572 (1994) ("the premise . . . that a litigant who prevails under the cost statute is
17 necessarily the prevailing party for purposes of attorney fees, has been uniformly rejected by
18 the courts"). While a cost statute "focus[es] on the procedural outcome of th[e] claims,"[6] the
19 CLRA's fee-shifting provision looks to whether "each party has realized its litigation
20 objectives." Id. at 151-52 (internal quotations and citations omitted).[7] As Ozard correctly
21 notes, ConAgra has not "prevailed" under the CLRA "because it still faces liability on every
22 claim that was extant when [he] was dismissed from this case." Opp'n at 15.

---

[5] See also Flannery v. Cal. Highway Patrol, 61 Cal. App. 4th 629, 647 (1998) ("Whether an [attorneys' fee] award is justified and what amount the award should be are two distinct questions, and the factors relating to each must not be intertwined or merged.").

[6] See, e.g., Cal. Civ. Proc. Code § 1032(a)(4) ("'Prevailing party' includes . . . a defendant as against those plaintiffs who do not recover any relief against that defendant").

[7] This, in turn, explains why ConAgra's reliance on Cooter, which analyzes cost-shifting under Federal Rules of Civil Procedure 11, is misplaced. See Mot. at 2.

5

1   ConAgra next argues that adopting a pragmatic approach still casts it as the prevailing
2   party. Reply (dkt. 167) at 3. First, ConAgra asserts that, while "Ozard cites cases employing
3   a 'pragmatic' approach in determining which party has prevailed, these cases provide further
4   support for ConAgra's position." Id. But the cases ConAgra cites are distinguishable; they
5   address prevailing party status either via the cost statute's definition[8] or after a complete
6   dismissal of the plaintiffs' claims against all parties involved.[9] See id. at 3-4. Second,
7   ConAgra claims that Ozard's withdrawal from the case "removed two challenged label
8   statements and one challenged product from the case," and thus dismissal of these two
9   substantive issues confers prevailing party status to ConAgra under the pragmatic inquiry.
10  Id. at 4-5. That is, ConAgra alleges that, because PAM Original and Olive Oil products
11  claimed to be "100% natural" and PAM Butter product claimed to be "made with 100%
12  natural vegetable oil," Sturges's statement that he is not challenging the "made with" label
13  means that no other party to the litigation will. Id. at 4. This slight variation in language,
14  however, is insufficient to warrant a finding that ConAgra achieved its litigation objectives
15  on a substantiative issue. Consequently, as Ozard states, "ConAgra has not prevailed in any
16  substantive way on any issue in this lawsuit. The only difference is procedural: Mr. Ozard is
17  no longer a party." Opp'n at 14. The Court therefore holds that ConAgra is not a prevailing
18  party within the meaning of the CLRA.

19  **B.   Good Faith**

20  ConAgra next argues that Ozard did not proceed in good faith in litigating his claims
21  because Ozard (1) asserted claims based on false allegations and (2) refused to communicate
22  and comply with discovery obligations. Mot. at 3. Ozard responds that ConAgra has not
23  established that he acted in subjective bad faith. Opp'n at 4.

---

[8] Santisas v. Goodin, 17 Cal. 4th 599, 609 (1998) ("conclud[ing] that under the cost statutes [Cal. Civ. Proc. Code § 1032] . . . defendants are entitled to recover their attorney fees").

[9] Hsu v. Abbara, 9 Cal. 4th 863, 877 (1995) (granting attorneys' fees only when the "defendant obtain[ed] a simple, unqualified victory by defeating the only contract claim in the action"); Winick Corp. v. Safeco Ins. Co., 187 Cal. App. 3d 1502, 1508 (1986) (holding that, although the defendant prevailed on technical grounds for failure to serve and return summons within three years, the complete dismissal of the case warranted prevailing party status).

6

As a preliminary matter, a trial court may award reasonable attorneys' fees "to a prevailing defendant upon a finding by the court that the plaintiff's prosecution of the action was not in good faith." Cal. Civ. Code § 1780(e). "Courts have uniformly constructed this language as requiring a subjective test." Corbett v. Hayward Dodge, Inc., 119 Cal. App. 4th 915, 924 (2004). "[G]ood faith, or its absence, involves a factual inquiry into the plaintiff's subjective state of mind." Id. at 923. Thus, the CLRA fee-shifting "statutory provision requires the trial court to find that the plaintiff proceeded in subjective bad faith before it may award fees to a prevailing defendant." Shisler v. Sanfer Sports Cars, Inc., 167 Cal. App. 4th 1, 9 (2008)). The party moving for attorneys' fees has the burden of proving that the plaintiff proceeded in subjective bad faith. Corbett, 119 Cal. App. 4th at 926.

### 1.     False Allegations

ConAgra first argues that Ozard's willful blindness in prosecuting his CLRA claims constitutes subjective bad faith. Mot. at 11-13. In particular, ConAgra points out that Ozard testified that he had not read the Complaint. See id. at 12 ("Ozard asserted claims based on false factual allegations, which he either failed to review in advance or failed to correct after reviewing."). Ozard responds that ConAgra has failed to demonstrate that he was an "uninformed, unconcerned party," as its selective record citations suggest. Opp'n at 7.

First, ConAgra adopts a standard of subjective bad faith that does not comport with the Legislature's apparent intent in enacting the CLRA. The CLRA provides that: "This title shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices . . . ." Cal. Civ. Code § 1760. Based on this language, courts interpret the CLRA "to encourage such prosecutions." Corbett, 119 Cal. App. 4th at 924. And, courts note that "[t]he Legislature notably omitted any language . . . that indicates attorney fees can be imposed upon a plaintiff prosecuting a CLRA claim solely on a finding that the prosecution was 'frivolous' or without 'reasonable cause.'" Id.

Here, ConAgra claims that Ozard's "meritless motion" with "groundless claims" amount to subjective bad faith under a willful blindness standard. Mot. at 12 ("[w]illful

7

blindness is an instructive concept in this regard"). But, ConAgra provides no support for its position that willful blindness equates to subjective bad faith, and in fact courts have rejected a similar argument, holding that the "[CLRA fee-shifting provision] does not include 'frivolous' actions as a consideration for awarding attorney fees to prevailing defendants." Corbett, 119 Cal. App. 4th at 923. Thus, ConAgra's emphasis on Ozard remaining "indifferen[t]" and demonstrating little involvement in the proceedings, Mot. at 5, is insufficient to establish subjective bad faith, as intended by the Legislature.

Second, ConAgra has not demonstrated that Ozard's withdrawal from the case was for an improper purpose, which courts have generally required to support a finding of subjective bad faith. An improper motive can be explicit. See e.g., Pickman v. Am. Exp. Co., No. C 11-05326 WHA, 2012 WL 1357636, *3 (N.D. Cal. Apr. 17, 2012) ("By counsel's own admission, he filed the instant action [alleging CLRA violations] to engage in forum shopping."). Or, an improper motive can be inferred. See e.g., Corbett, 119 Cal. App. 4th at 926 ("evidence of an improper motive may be established by the circumstances such as evidence of personal animus or purposeful use of dilatory tactics for purpose of delay"). But, courts do not automatically infer some ulterior motive where the theory underlying a plaintiff's claim is simply "weak." See id. at 929 (holding that, although the plaintiff's CLRA claims were based on "weak evidence," defendant failed to establish that the plaintiff acted in subjective bad faith). Even when a defendant successfully defends itself against CLRA claims, the defendant is not necessarily entitled to attorneys' fees. See, e.g., Kleffman v. Vonage Holdings Corp., Fed. App'x 696, 698 (9th Cir. 2010) (holding that the defendant failed to establish subjective bad faith, even though only a "consumer" may bring CLRA claims and the plaintiff was not a "consumer").

Here, ConAgra has not come forward with evidence that Ozard pursued this action for some ulterior motive, and its "willful blindness to the falsity of the allegations" argument does not compel the Court to find otherwise. Mot. at 11-12. In suggesting an ulterior motive, ConAgra paints an incomplete picture of the record. For example, Ozard testified that he has "suffered no injury, financial or otherwise, from purchasing any Hunt's," which

ConAgra claims "demonstrates that Mr. Ozard's action was not pursued in good faith." Id. at 8-9. Yet ConAgra does not mention that Ozard also testified that Hunt's "100% Natural" representation was a factor in his purchasing decision. See Mot., Ex. C at 86:3-8. Thus, to the extent that Ozard would not have purchased Hunt's without that representation, he suffered an injury—i.e., the cost of the purchasing the product. Ozard further testified that his CLRA complaints were motivated by internet research that led him to believe that he was deceived and misled. Opp'n at 8. Because he "read and relied upon certain website representations," Ozard states that "his entrance into the lawsuit was for legitimate purposes." Id. at 7. Accordingly, Ozard has demonstrated his "good faith belief [that his] action was meritorious." See Corbett, 119 Cal. App. 4th at 929 ("it is within a court's discretion not to draw the inference if convinced the party was acting in the good faith belief the action was meritorious").

Third, inherent in the CLRA's attorneys' fees provision analysis is the equitable principle of fairness. See Carroll v. State of Cal., 217 Cal. App. 3d 134, 141 (1990) ("Encompassed within the legal definition of 'good faith' is the equitable principle of fairness."). Here, ConAgra requests a significant sum of money from a single-named class representative, even though "[e]very action taken by ConAgra in defending claims concerning its products would have been necessary with or without the involvement in the case of . . . Ozard." Opp'n at 3. Specifically, Jones was and still is pursuing the claims involving Hunt's, Sturges was and still is pursuing the claims involving PAM, and Ozard was but no longer is pursuing those same claims related to Hunt's and PAM. See id. Thus, ConAgra "still faces liability on every claim that was extant when Mr. Ozard was dismissed from this case," and ConAgra would have incurred the same attorneys' fees and costs absent Ozard's participation in the litigation. Id. at 15.

### 2. Lacking Communication And Discovery Obligations

ConAgra next alleges that Ozard proceeded in subjective bad faith because he refused to participate in discovery and "remained incommunicado until ConAgra demanded to take

1  his deposition." Mot. at 13. Ozard "admit[s] [that] he did not return telephone calls to his
2  counsel" but says that he "acted responsibly in withdrawing from this litigation." Opp'n at 9.

3  First, Ozard's withdrawal from the case was not an attempt to avoid discovery
4  obligations, as ConAgra contends. See Mot. at 13; see also Reply at 8 ("Ozard offers no
5  legitimate reasons for" "waiting months before withdrawing"). Rather, Ozard explains in
6  great detail the occupational hardships that made his continued participation in the lawsuit
7  impractical. Opp'n at 9. Ozard states that he owns four businesses and that, shortly after
8  joining the lawsuit, the growth of one of his franchises required a more significant time
9  commitment. Id. (testifying that he was working more than eighty hours per week "to keep
10 up with the new demands presented by his business"). His testimony indicates that, while
11 Ozard was sometimes unresponsive to discovery requests, his conduct was not a result of
12 subjective bad faith. See Corbett, 119 Cal. App. 4th at 923 ("courts have explained that good
13 faith, or its absence, involves a factual inquiry into the plaintiff's subjective state of mind").

14 Furthermore, contrary to ConAgra's assertion, Ozard's limited participation in the
15 discovery process did not prejudice ConAgra. See Mot. at 9 ("Ozard sat back, failed to
16 communicate with counsel, and paid no heed to the very expensive legal process in which he
17 was a critical player"). With respect to timeliness, ConAgra states that it served all Plaintiffs
18 with document requests and deposition notices on March 1, 2013, and that it was not until
19 March 19, 2013 that Ozard informed ConAgra of his desire to withdraw as a class
20 representative. Id. at 3-4. This eighteen-day lull, in light of Ozard's eighty-hour-per-week
21 work schedule, is not a "cavalier attitude toward his litigation obligations," as ConAgra
22 suggests. Id. at 13. ConAgra contends that deposing Ozard "appeared to be the only means
23 to confirm whether factual allegations in the Complaint . . . ever had any basis in fact." Id. at
24 5. ConAgra gives the following example to illustrate its point: the SAC alleges that Plaintiffs
25 relied on ConAgra's product label providing for Lycopene antioxidant nutrient content, yet

10

Jones and Sturges denied that Lycopene was a factor in their purchasing decision. Id. at 7.[10] But Ozard, like Jones and Sturges, denied that Lycopene informed his purchasing decision. Opp'n, Ex. D at 88:16-20.

Second, ConAgra's argument that its litigation efforts were obstructed by Ozard's spoilation of evidence is unconvincing. ConAgra alleges that Ozard's discovery obligations further evince subjective bad faith because he disposed of his ConAgra product purchase receipts. Mot. at 13-14.[11] But, as Ozard points out, he testified that he "retained all receipts while he was a party to the litigation," and only "[a]fter he made a decision to withdraw from the case, he assumed the receipts would no longer be necessary, and disposed of them." Opp'n at 12-13. This testimony reveals that Ozard lacked subjective bad faith when he disposed of his product receipts. See Corbett, 119 Cal. App. 4th at 923 ("courts have explained that good faith, or its absence, involves a factual inquiry into the plaintiff's subjective state of mind").

Accordingly, ConAgra has failed to meet its burden and establish that Ozard proceeded in subjective bad faith when he filed and litigated his CLRA claims.

**IV.    CONCLUSION**

For the foregoing reasons, the Court DENIES ConAgra's Motion for Attorneys' Fees.

**IT IS SO ORDERED.**

Dated: December 16, 2013

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

---

[10] This Court allowed Plaintiffs' Lycopene claim to survive dismissal based on the FAC's allegation that Plaintiffs relied on the label in making their purchasing decision. See Order Granting In Part ConAgra MTD at 14; see also Mot. at 7, n.6.

[11] ConAgra cites to a case analyzing willful blindness in the context of a request for declaratory judgment after dismissal from a distributorship. See id. at 14 (citing Anheuser-Busch, Inc. v. Natural Beverage Distribs., 151 F.R.D. 346, 354 (N.D. Cal. 1993) aff'd, 69 F.3d 337 (9th Cir. 1995) (deciding whether to issue sanctions under Federal Rules of Civil Procedure 37 against a defendant who had concealed documents and continuously lied under penalty of perjury)).