Robert B. Hawk (Bar No. 118054)
J. Christopher Mitchell (Bar No. 215639)
Stacy R. Hovan (Bar No. 271485)
HOGAN LOVELLS US LLP
4085 Campbell Avenue, Suite 100
Menlo Park, California  94025
Telephone:  (650) 463-4000
Facsimile:  (650) 463-4199
robert.hawk@hoganlovells.com
chris.mitchell@hoganlovells.com
stacy.hovan@hoganlovells.com

Douglas M. Schwab (Bar No. 43083)
Benjamin T. Diggs (Bar No. 245904)
HOGAN LOVELLS US LLP
3 Embarcadero Center, 15th Floor
San Francisco, CA  94111
Telephone:      (415) 374-2300
Facsimile:      (415) 374-2499
douglas.schwab@hoganlovells.com
benjamin.diggs@hoganlovells.com

Attorneys for Defendant
CONAGRA FOODS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JONES, *et al.*, | Case No.  12-cv-1633-CRB |
| Plaintiffs, | **OPPOSITION MEMORANDUM OF CONAGRA FOODS, INC. TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION (HUNT'S)** |
| v. | |
| CONAGRA FOODS, INC., | Hearing Date:  June 6, 2014 Time:  10:00 a.m. Judge:  Hon. Charles R. Breyer |
| Defendant. | |

## STATEMENT OF ISSUES

1.      **Ascertainability.**  Is Plaintiff's proposed class ascertainable where it includes consumers who cannot have been injured by the alleged conduct and where neither Hunt's consumers nor ConAgra will have records showing what products were purchased, by whom and for how much, and whether those products had the label statements at issue?

2.      **Standing.**  Does Plaintiff have standing to represent the proposed class where he did not rely on the label statements at issue and cannot establish causation or injury?

3.      **Typicality.**  Can Plaintiff serve as a typical representative for a proposed class of consumers allegedly deceived and injured as a result of the label statements at issue, where he himself was not deceived or injured?

4.      **Adequacy of Plaintiff and His Counsel.**  Given his standing and typicality problems, is Plaintiff an adequate representative?  Can Class Counsel adequately represent the class where the record shows they made false factual allegations in the Complaints?

5.      **Commonality and Predominance – Reliance.**  Can a class be certified where individual issues of reliance, causation, and materiality predominate?

6.      **Commonality and Predominance – Monetary Recovery.**  Can a class be certified where individual issues of monetary recovery predominate and Plaintiff has provided no workable model to show how restitution or damages could be calculated on a class basis?

7.      **23(b)(2) Class.**  Can a 23(b)(2) class be certified where injunctive relief is not merely incidental to Plaintiff's requested monetary damages, and where Plaintiff lacks standing?

ConAgra's opposition to Plaintiff's Motion for Class Certification is based on this opposition brief, as well as on the Declaration of Timothy Nangle (Nangle Dec.), the Declaration of Dominique Hanssens (Hanssens Dec.), the Declaration of Keith Ugone (Ugone Dec.),  the Declaration of Robert Hawk (Hawk Dec.), the Request for Judicial Notice (RJN), and all exhibits to the foregoing.  Unless otherwise indicated, all "Ex. _" citations in this brief refer to exhibits to the Hawk Declaration.

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND ................................................................................................ 2

        A.      Levi Jones ................................................................................................ 2

        B.      Hunt's Tomatoes -- Labels, Varieties, Ingredients and Prices ................................ 3

        C.      "100% Natural" Has No Uniform Meaning ................................................ 7

III.    DISCUSSION ................................................................................................ 8

        A.      Plaintiff Lacks Standing ................................................................ 8

        B.      Plaintiff Has Not Satisfied The Requirements of Rule 23(a) ................ 11

                1.      The Proposed Class Is Not Ascertainable ................................ 11

                2.      Plaintiff's Claims Are Not Typical ................................ 15

        C.      Neither Plaintiff Nor His Counsel Are Adequate ................................ 15

        D.      Plaintiff Has Not Satisfied The Requirements of Rule 23(b)(3) ................ 16

                1.      Individual Issues of Reliance Predominate Over Common Issues ........... 16

                2.      Individual Issues Concerning Damages And Restitution
                        Predominate Over Common Issues ................................ 21

        E.      This Case Cannot Be Certified Under Rule 23(b)(2) ................ 25

Hogan Lovells US
LLP
Attorneys At Law
Menlo Park

ii

OPPOSITION TO CLASS CERT. (HUNT'S)
CASE NO. 12-CV-01633-CRB

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**CASES**

4

*Amgen, Inc. v. Conn. Ret. Plans & Trust Funds,*
    133 S.Ct. 1185 (2013) ............................................................................................ 18

5

*Astiana v. Ben & Jerry's Homemade, Inc.,*
6
    2014 WL 60097 (N.D. Cal. Jan. 7, 2014) ...................................................... 11, 13

7

*Astiana v. Kashi Co.,*
    291 F.R.D. 493 (S.D. Cal. 2013).................................................... 7, 12, 15, 17
8

9

*Badella v. Deniro Mktg. LLC,*
    2011 WL 5358400 (N.D. Cal. Nov. 4, 2011).................................................. 17

10

*Berger v. Home Depot USA, Inc.,*
11
    741 F.3d 1061 (9th Cir. 2014).................................................... 9, 10, 11

12

*Brazil v. Dole Food Co.,*
    2013 WL 5312418 (N.D. Cal. Sept. 23, 2013) ............................................. 9
13

14

*Califano v. Yamasaki,*
    442 U.S. 682 (1979)........................................................................................ 8

15

*Campion v. Old Republic Home Prot. Co.,*
16
    272 F.R.D. 517 (S.D. Cal. 2011)................................................................ 19

17

*Carrera v. Bayer Corp.,*
    727 F.3d 300 (3rd Cir. 2013) ...................................................................... 14
18

19

*CFM Commc'ns, LLC v. Mitts Telecasting Co.,*
    424 F. Supp. 2d 1229 (E.D. Cal. 2005)...................................................... 5

20

*Cohen v. DirecTV, Inc.,*
21
    178 Cal. App. 4th 966 (2010)........................................................................ 19

22

*Comcast Corp. v. Behrend,*
    133 S.Ct. 1426 (2013) ............................................................................ 8, 20
23

24

*Daubert v. Merrell Dow Pharm., Inc.,*
    509 U.S. 579 (1993)................................................................................ 8, 22

25

*Diacakis v. Comcast Corp.,*
26
    2013 WL 1878921 (N.D. Cal. May 3, 2013) .......................................... 11, 13, 19

27

*Dioquino v. Sempris,*
    2012 WL 6742528 (C.D. Cal. Apr. 9, 2012) ............................................ 13, 14
28

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
MENLO PARK

iii

OPPOSITION TO CLASS CERT. (HUNT'S)
CASE NO. 12-CV-01633-CRB

*Faulk v. Sears Roebuck & Co.*,
2013 WL 1703378 (N.D. Cal. Apr. 19, 2013) ........................................................................ 19

*Figy v. Amy's Kitchen, Inc.*,
2013 WL 6169503 (N.D. Cal. Nov. 25, 2013) ........................................................................... 9

*Friedman-Katz v. Lindt & Sprungli (USA), Inc.*,
270 F.R.D. 150 (S.D.N.Y. 2010) ............................................................................................ 16

*General Tel. Co. of the Sw. v. Falcon*,
457 U.S. 147 (1982) ................................................................................................................... 8

*Gitson v. Trader Joe's Co.*,
2013 WL 5513711 (N.D. Cal. Oct. 4, 2013) ........................................................................... 20

*Hairston v. S. Beach Beverage Co.*,
2012 WL 1893818 (C.D. Cal. May 18, 2012) .......................................................................... 11

*Hernandez v. Chipotle Mexican Grill, Inc.*,
2013 WL 6332002 (C.D. Cal. Dec. 2, 2013) ........................................................................... 14

*Hodes v. Van's Int'l Foods*,
2009 WL 2424214 (C.D. Cal. July 23, 2009) .......................................................................... 19

*Hodgers–Durgin v. de la Vina*,
199 F.3d 1037 (9th Cir. 1999) .................................................................................................. 25

*In re Actimmune Mktg. Litig.*,
2010 WL 3463491 (N.D. Cal. Sept. 1, 2010) ............................................................................ 9

*In re Countrywide Fin. Corp. Mortg. Mktg. & Sales Practices Litig.*,
277 F.R.D. 586 (C.D. Cal. 2011) ............................................................................................. 13

*In re Facebook, Inc., PPC Adver. Litig.*,
282 F.R.D. 446 (N.D. Cal. 2012) ............................................................................................. 24

*In re iPhone Application Litig.*,
2013 WL 6212591 (N.D. Cal. Nov. 25, 2013) ........................................................................... 9

*In re POM Wonderful LLC Mktg. and Sales Litig.*,
2014 WL 1225184 (C.D. Cal. Mar. 25, 2011) ................................................................... 13, 22

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
725 F.3d 244 (D.D.C. 2013) .............................................................................................. 21, 23

*In re Steroid Hormone Prod. Cases*,
181 Cal. App. 4th 145 (2010) .................................................................................................. 20

*In re Tobacco II Cases*,
46 Cal. 4th 298 (2009) ....................................................................................................... 18, 19

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
MENLO PARK

iv

OPPOSITION TO CLASS CERT. (HUNT'S)
CASE NO. 12-CV-01633-CRB

*In re Vioxx Class Cases,*
  180 Cal. App. 4th 116 (2010)..........................................................................17, 24

*Jones v. ConAgra Foods, Inc.,*
  912 F. Supp. 2d 889 (N.D. Cal. 2012) ......................................................................6

*Jou v. Kimberly-Clark Corp.,*
  2013 WL 6491158 (N.D. Cal. Dec. 10, 2013) .........................................................25

*Kandel v. Brother Int'l Corp.,*
  264 F.R.D. 630 (C.D. Cal. 2010) .............................................................................15

*Kottaras v. Whole Foods Mkt., Inc.,*
  281 F.R.D. 16 (D.D.C. 2012)...............................................................................23, 24

*Kwikset Corp. v. Super. Ct.,*
  51 Cal. 4th 310 (2011) ...........................................................................................9, 10

*Lanovaz v. Twinings N. Am., Inc.,*
  2013 WL 675929 (N.D. Cal. Feb. 25, 2013)............................................................11

*Lanzarone v. Guardsmark Holdings, Inc.,*
  2006 WL 4393465 (C.D. Cal. Sept. 7, 2006).............................................................2

*Larsen v. Trader Joe's Co.,*
  2012 WL 5458396 (N.D. Cal. June 14, 2012) .........................................................11

*Laster v. T-Mobile USA, Inc.,*
  2009 WL 4842801 (S.D. Cal. Dec. 14, 2009)...........................................................18

*Lewis v. Casey,*
  518 U.S. 343 (1996) ...................................................................................................8

*Lockwood v. ConAgra Foods, Inc.,*
  597 F. Supp. 2d 1028 (N.D. Cal. 2009) .....................................................................7

*Major v. Ocean Spray Cranberries, Inc.,*
  2013 WL 2558125 (N.D. Cal. June 10, 2013) .........................................................11

*Marcus v. BMW of N. Am.,*
  687 F.3d 583 (3rd Cir. 2012) ...................................................................................15

*Mass. Mut. Life Ins. Co. v. Super. Ct.,*
  97 Cal. App. 4th 1282 (2002)...................................................................................18

*Moheb v. Nutramax Labs., Inc.,*
  2012 WL 6951904 (C.D. Cal. Sept. 14, 2012)..........................................................25

*Ogden v. Bumble Bee Foods, LLC,*
  2014 WL 27527 (N.D. Cal. Jan. 2, 2014) ...........................................................24, 25

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
MENLO PARK

v

OPPOSITION TO CLASS CERT. (HUNT'S)
CASE NO. 12-CV-01633-CRB

*Oshana v. Coca-Cola Co.*,
    472 F.3d 506 (7th Cir. 2006) ................................................................. 13

*Pelayo v. Nestle, USA, Inc.*,
    2013 WL 5764644 (C.D. Cal. Oct. 25, 2013) .......................................... 18

*Rahman v. Mott's LLP*,
    2014 WL 325241 (N.D. Cal. Jan. 29, 2014) ............................................ 25

*Red v. Kraft Foods, Inc.*,
    2012 WL 8019257 (C.D. Cal. Apr. 12, 2012) .................................. 14, 23

*Ries v. Arizona Beverages USA, LLC (Ries I)*,
    287 F.R.D. 523 (N.D. Cal. 2012) ..................................................... 15, 25

*Ries v. Arizona Beverages USA, LLC (Ries II)*,
    2013 WL 1287416 (N.D. Cal. Mar. 28, 2013) ................................. 24, 25

*Sethavanish v. ZonePerfect Nutrition Co.*,
    2014 WL 580696 (N.D. Cal. Feb. 13, 2014) ................................... 13, 15

*Stearns v. Ticketmaster Corp.*,
    655 F.3d 1013 (9th Cir. 2011) ...................................................... passim

*Tucker v. Pacific Bell Mobile Servs.*,
    208 Cal. App. 4th 201 (2012) .................................................................. 19

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S.Ct. 2541 (2011) ...................................................................... 8, 25

*Weiner v. Snapple Beverage Corp.*,
    2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010) .......................................... 23

*Williams v. Balcor Pension Investors*,
    150 F.R.D. 109 (N.D. Ill. 1993) ............................................................. 16

*Williamson v. The Reinalt-Thomas Corp.*,
    2012 WL 1438812 (N.D. Cal. Apr. 25, 2012) .................................... 9, 10

*Wood v. Motorola Mobility, Inc.*,
    2012 WL 892166 (N.D. Cal. Mar. 14, 2012) ........................................... 9

*Xavier v. Philip Morris USA, Inc.*,
    787 F. Supp. 2d 1075 (N.D. Cal. 2011) .................................... 11, 13, 14

**OTHER AUTHORITIES**

7 C.F.R. § 205.605 ....................................................................................... 5, 6

21 C.F.R. § 155.190 ......................................................................................... 5

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
MENLO PARK

vi

OPPOSITION TO CLASS CERT. (HUNT'S)
CASE NO. 12-CV-01633-CRB

21 C.F.R. § 184.1033 ................................................................................................................ 5

21 C.F.R. § 184.1193 ................................................................................................................ 5

48 Fed. Reg. 23,270 (May 24, 1983) ........................................................................................ 7

58 Fed. Reg. 2302 (Jan. 6, 1993) ............................................................................................. 7

Hogan Lovells US
LLP
Attorneys At Law
Menlo Park

vii

OPPOSITION TO CLASS CERT. (HUNT'S)
CASE NO. 12-CV-01633-CRB

1

## I.     INTRODUCTION

2         Plaintiff Levi Jones moves to certify a class of California purchasers of ConAgra's Hunt's

3   canned tomato products with one or both of the label statements (i) "100% Natural" or (ii) "Free

4   of Artificial Ingredients & Preservatives," and that included one or both of the ingredients

5   (iii) citric acid or (iv) calcium chloride.  Plaintiff's Motion for Class Certification (Mot.) at 1.

6   The proposed class is unusually complex:  it encompasses literally dozens of flavor varieties,

7   sizes, and packaging variations of Hunt's tomatoes, with differing combinations of label

8   statements appearing on different products at different points in time within the class period – and

9   with different ingredients or combinations of ingredients serving as the asserted reason(s) why

10  label statements are deceptive.

11        Barriers to certification of this complex proposed class are insurmountable.  To begin,

12  Jones lacks standing to represent the class and is not a typical or adequate plaintiff:  he did not

13  rely on either of the challenged statements and did not purchase any Hunt's products "as a result

14  of" them.  Jones's class definition is also unworkable.  During the putative class period, some

15  label variations included the "100% Natural" statement, others did not.  Some included the "Free

16  of Artificial Ingredients & Preservatives" statement, others did not, and still others included the

17  statement during some but not all of the class period.  Hunt's consumers from April 2008 to the

18  present – a tiny fraction of whom will have kept grocery receipts or will remember statements on

19  cans of tomatoes/sauce/puree/etc. bought months or years ago – will be unable to determine

20  whether they are members of Plaintiff's proposed class.  Nor will the Court or the parties be able

21  to make that determination – Jones certainly offers no trial plan.

22        The proposed class also fails Rule 23(b)(3)'s predominance requirement:  individual

23  reliance issues predominate over any questions that might be resolved by common proof.

24  Whether the label statements at issue were material to class member purchase decisions varies

25  from consumer to consumer, and Plaintiff's only evidence to the contrary is the unconvincing

26  (and ultimately inadmissible) conclusion of an expert who did no scientific work to support her

27  opinion.  As to injury and damages, Plaintiff relies exclusively on the testimony of an economic

28  expert whose models are flawed and incomplete – multiple courts have already held as much.

Hogan Lovells US
LLP
Attorneys At Law
Menlo Park

- 1 -

OPPOSITION TO CLASS CERT. (HUNT'S)
CASE NO. 12-CV-01633-CRB

1    Failure of Plaintiff's damages models alone precludes certification of a Rule 23(b)(3) class.  For

2    all of these reasons, *no class* can be certified here.

3    **II.    BACKGROUND**

4         Plaintiff seeks to represent a class of California consumers who purchased a

5    heterogeneous assortment (dozens in all) of Hunt's canned tomato products since April 2008.

6    Levi Jones claims to have purchased only (1) Diced Tomatoes, and (2) Tomato Sauce.  *Id.* at 2.

7    The SAC alleges that the "100% Natural" and "Free of Artificial Ingredients & Preservatives"

8    statements that appeared on Hunt's labels were "false and misleading" and that as a result of these

9    "misrepresentations," Jones "purchased the products at issue."  SAC, Dkt. No. 95, ¶¶ 87, 142.

10        **A.    Levi Jones**

11        Plaintiff's own experiences with Hunt's bear little resemblance to the claims he seeks to

12   assert on behalf of a class.  Jones admits that nothing on the label influenced his decision to

13   purchase Hunt's Diced Tomatoes during the proposed Class Period:

14        **Q. When you've purchased Hunt's diced tomatoes since April 2008, was there
          anything particular on the label that was a factor in your decision to purchase
15        the Hunt's diced tomatoes?**

16        **A. On the label?  No – like I said, loyal customer.**

17   Ex. D at 53-54.[1]  As to Tomato Sauce, he *cannot recall* if the "100% Natural" representation

18   affected any Class Period purchase decisions.  *Id.* at 59.[2]  And Jones cannot say whether he read

19   or relied on any "Artificial/Preservatives" label claim during the class period.  *Id.* at 52-54, 57-58,

20   81-82.  Nor could he confirm, even as of the date of his deposition, whether he considered the

---

[1] Unless otherwise noted, all Exhibit references are to the accompanying Declaration of Robert B. Hawk.

[2] On cross-examination by his own counsel in response to leading questions, Jones testified that he read and relied on the "100% Natural" label statement.  *Id.* at 134-35.  He did not, however, testify that he did so *within the proposed class period* – and in fact, expressly testified that he did not rely on label representations during that time.  *Id.* at 52-54, 59.  After privately conferring with his counsel and in response to other leading questions by his counsel, Jones retracted sworn testimony that he would have purchased Hunt's tomatoes even had he known they contained citric acid and/or calcium chloride.  *Id.* at 136.  Jones thus faces serious credibility issues and will be subject to searching cross-examination at trial, raising questions about his adequacy and typicality to represent the class.  What is more, Plaintiff cannot establish standing or typicality simply by recanting sworn testimony.  *See Lanzarone v. Guardsmark Holdings, Inc.*, 2006 WL 4393465, at *6 (C.D. Cal. Sept. 7, 2006) (party cannot satisfy typicality requirement by contradicting his own testimony).

Hogan Lovells US
LLP
Attorneys At Law
Menlo Park

- 2 -

OPPOSITION TO CLASS CERT. (HUNT'S)
CASE NO. 12-CV-01633-CRB

1  preservative statement inaccurate as used on Hunt's tomato products, *id.* at 82-83 –

2  notwithstanding Jones's allegations of deception in the Complaint.  In fact, Jones bought for

3  reasons wholly unrelated to the label representations:  he was a "creature of habit," he was loyal

4  to the brand, and he "probably" also bought Hunt's because his parents did as well.  *Id.* at 52-54.

5  In approximately 20 years of purchasing Hunt's, *he was never dissatisfied* – until he spoke with

6  Sparky Lovelace, one of the Plaintiff lawyers in this action.  *Id.* at 52, 101-102.

7        Jones is an unsuitable plaintiff in other ways.  Although he challenges the "100% Natural"

8  statement, he would actually prefer products not labeled "natural" depending on price, content

9  and flavor.  *Id.* at 75.  And while his lawyers complain about citric acid and/or calcium chloride in

10  Hunt's tomatoes, Jones himself does not try to avoid either ingredient.  *Id.* at 77, 79.  To the

11  contrary, after this lawsuit was filed, he purchased other canned tomatoes and other products

12  containing those ingredients.  *Id.* at 114, 117-18, 121-22, 127-28.  More fundamentally, Jones

13  admits that he would have bought Hunt's canned tomatoes even had he known they contained

14  citric acid and/or calcium chloride.  *Id.* at 77-78, 80.  And notwithstanding contrary allegations in

15  the Complaint, Jones testified unequivocally that a product's compliance with labeling law was

16  *not a factor* in his purchase.  *Compare id.* at 63 *with* SAC ¶¶ 237, 242.

17        **B.**    **Hunt's Tomatoes – Labels, Varieties, Ingredients and Prices**

18        According to Plaintiff, there are seven segments of Hunt's canned tomatoes.  Mot. at 1-2.

19  Jones claims that all bore the identical "Natural Claim" and "Preservative Claim" throughout the

20  Class Period, *id.* at 2-3, and that "[e]ach member of the putative class was exposed to the same

21  misbranded and misleading labels."  *Id.* at 7.  But the reality is different and far more complex.

22        **Varieties:**  The "seven segments" represent very different products – ranging from canned

23  Whole Tomatoes to Tomato Paste and Tomato Sauce.  The culinary uses and consumer

24  expectations about the products necessarily differ from segment to segment.  What is more, each

25  segment contains a number of distinct varieties/flavors.  Nangle Dec. ¶ 6.  For example, Hunt's

26  Diced Tomatoes were sold in no less than 16 different flavor varieties within the alleged class

27  period.  *Id.*  They were also sold in two sizes – 14.5 ounces and 28 ounces – as well as an eight-

28  pack of 14.5 ounce cans.  *Id.*  All told, there were 20 different size/variety permutations within the

Diced Tomatoes alone.  *Id.*  The other segments tell a similar story.  *Id.*

In addition, the product labels changed *during the proposed class period*, at different times depending on variety and can size.  Some varieties said "100% Natural," while others did not.  *Id.*  Some varieties bore the "Artificial/Preservatives" statement throughout the class period, some never had it, and others removed the statement – at different times depending on the variety and can size – to make room for other information (such as recipes).  *Id.* ¶¶ 10-11, 14.  At a particular point in time, a 14.5 ounce can of Hunt's Petite Diced Tomatoes or a 28 ounce can of Hunt's Diced Tomatoes might include the preservatives statement, while a 14.5 ounce can of Hunt's Diced Tomatoes would not.  *Id.* ¶ 14.  And following a label change, the same can size and varieties would be sold both with and without the preservatives statement, until the stock of the old labels was depleted.  *Id.* ¶ 12.

Regardless of the variety, size, or date, the challenged Artificial/Preservative statement has *not* appeared on the front panel of any Hunt's product.  *Id.* ¶ 10.  Rather, if included at all, it appeared on the back of the can.  *Id.*  This is important, because as cans are typically displayed on supermarket shelves, the preservative statements are not visible to the shopper unless the products are picked up and inspected.  *Id.*  Together, the evidence shows that it is likely that many members of Plaintiff's proposed class *never saw the challenged preservative statement* – either because the statement was not on the product they purchased or because (like Jones himself, who only "occasionally" reads rear labels, Ex. D at 41) they did not examine the back of the can.  (The same is true for the "100% Natural" statement, as it has not appeared at all on some varieties of Hunt's canned tomato products during the class period.  Nangle Dec. ¶ 6.)

**Ingredients:**  The ingredients in Hunt's canned tomatoes differ by product.  Calcium chloride is an ingredient in Hunt's Whole Tomatoes, Diced Tomatoes, Stewed Tomatoes, and Crushed Tomatoes – *but not* in Hunt's Tomato Paste, Tomato Puree, or Tomato Sauce.  Ex. G ¶ 3.  Moreover, although Plaintiff's counsel seeks to paint it as a synthetic chemical, calcium chloride is, in reality, a naturally occurring compound (in essence, a soluble form of calcium) that helps tomatoes retain their firmness during the cooking that is part of canning.  *Id.* ¶¶ 3-5.  ConAgra uses naturally sourced calcium chloride in Hunt's products.  *Id.* ¶ 5; Ex. H ¶ 2.  Not

Hogan Lovells US
LLP
Attorneys At Law
Menlo Park

- 4 -

OPPOSITION TO CLASS CERT. (HUNT'S)
CASE NO. 12-CV-01633-CRB

1    surprisingly, therefore, calcium chloride is a near universally found ingredient in canned

2    tomatoes; it is "Generally Recognized as Safe" as a food ingredient by FDA, *see* 21 C.F.R.

3    § 184.1193, and in fact is included within *FDA's standard of identity* for canned tomato products.

4    21 C.F.R. § 155.190.  Calcium chloride, moreover, is a federally approved non-synthetic

5    ingredient in foods certified as organic.  *See* 7 C.F.R. § 205.605.

6            Citric acid, a naturally occurring compound found in high concentrations in fresh

7    tomatoes and other fruits/vegetables, is an ingredient in all Hunt's canned tomato products.  Ex. G

8    ¶ 6.  Citric acid, which acts as an acidifying agent to bring the pH level back toward the range of

9    acidity that many tomatoes have when picked, is ubiquitous in canned tomatoes.[3]  *Id.* ¶ 7.  It is

10   "Generally Recognized as Safe" as a food ingredient by FDA, *see* 21 C.F.R. § 184.1033, and is

11   included within FDA's standard of identity for canned tomatoes.  21 C.F.R. § 155.190.  Again,

12   ConAgra uses naturally sourced citric acid in Hunt's tomatoes, produced by a natural process of

13   fermentation using naturally defined carbohydrates, Ex. H ¶ 3; and citric acid is also a federally

14   approved non-synthetic ingredient in certified organic foods.  *See* 7 C.F.R. § 205.605.

15          Jones's Motion says that Hunt's labels are misleading, because the products include citric

16   acid and/or calcium chloride.  As support, Plaintiff relies entirely on the testimony of purported

17   food labeling expert Scarbrough, who takes it upon himself to give what Jones posits as the

18   ultimate answer in the case:  that Hunt's labeling violates federal regulatory law.  This *opinion*

19   *about the law* is of no help to the Court and is inadmissible.[4]  Scarbrough's legal conclusion,

20   moreover, is wrong.  For one thing, it is based only on his "understanding" that citric acid and

21   calcium chloride are "industrially produced" and that they are "therefore . . . synthetic

22   substances."  Dkt. 193 ¶ 15.  But Scarbrough specifies no basis whatsoever for his

23

24   _____

     [3] Indeed, Plaintiff Sturges (who allegedly purchased Hunt's products but who counsel does not
25   offer as a class representative here) testified that she continued buying canned tomatoes
     containing citric acid and/or calcium chloride even after the lawsuit was filed, because she could
26   not find any without those ingredients.  Ex. A at 171, 173, 179.  That leads to the obvious
     (unanswerable) question of what injury or damages she could have suffered from buying Hunt's.

27   [4] *See CFM Commc'ns, LLC v. Mitts Telecasting Co.*, 424 F. Supp. 2d 1229, 1233 (E.D. Cal.
     2005) (excluding proposed expert testimony as to the meaning of the FCC's regulations because
28   "expert testimony consisting of legal conclusions is generally inappropriate").

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
MENLO PARK

- 5 -

OPPOSITION TO CLASS CERT. (HUNT'S)
CASE NO. 12-CV-01633-CRB

"understanding."[5]  For another, Scarbrough fails to reconcile his conclusion with federal regulations listing both calcium chloride and citric acid as *non-synthetic* ingredients approved for used in organic foods.  *See* 7 C.F.R. § 205.605.  And while Scarbrough purports to rely on FDA warning letters – including a letter to ConAgra subsidiary Alexia Foods (Dkt. 193 ¶ 16) – he fails to acknowledge FDA's subsequent letter to Alexia confirming that FDA would not object to an "All Natural" label claim if the product at issue contained a *naturally-derived citric acid* (like that used in Hunt's tomatoes).  *See* Request for Judicial Notice ("RJN") Ex. B.[6]

**Pricing:**  ConAgra does not control the prices that retailers charge to consumers for any Hunt's canned tomato product.  Nangle Dec. ¶ 3.  Retailers themselves determine those prices. *Id.*  ConAgra purchases general retail pricing information from a third party, IRI, which collects and sells retail scanner data.  *Id.* ¶ 4.  The IRI retail data does not distinguish among the various labels used during the proposed class period.  *Id.* ¶ 13.  Thus, for example, with respect to Hunt's Diced Tomatoes, one cannot tell from IRI data which figures correspond to the product sold with the "Artificial/Preservatives" label claim and that without.  Critically, ConAgra's own prices to retailers *do not vary* depending on the presence or absence of a particular label claim.  *Id.* ¶ 8.  Put otherwise, ConAgra charges *no premium*:  its list prices to its retail customers have not varied based on whether the label referenced artificial/preservatives or "natural."  *Id.*  Finally, ConAgra has no way to determine, through IRI data or otherwise, who the purchasers of its canned tomato products are, *i.e.*, the identity of class members.  *Id.* ¶ 5.

Plaintiff's economic expert, Dr. Capps, nevertheless testifies that he *could* calculate damages on behalf of the putative class.  He has not, however, taken a single step to perform any analysis or otherwise show this is possible, a failing that has led at least two other district courts to reject his testimony.  *See infra* at III.D.2.  As discussed below, Dr. Capps's opinion also rests on demonstrably false premises, and ConAgra's economic expert, Dr. Keith Ugone, has determined that none of the three approaches Dr. Capps offers is reliable or relevant.  Ugone Dec.

---

[5] Scarborough entirely ignores evidence placed in the record in September 2012 that ConAgra uses only naturally sourced citric acid and calcium chloride.  *See* Dkt. 67-2, 67-4.

[6] This Court previously took judicial notice of the FDA Alexia letter.  *See Jones v. ConAgra Foods, Inc.*, 912 F. Supp. 2d 889, 901 n.6 (N.D. Cal. 2012) (Breyer, J.).

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
MENLO PARK

- 6 -

OPPOSITION TO CLASS CERT. (HUNT'S)
CASE NO. 12-CV-01633-CRB

at ¶¶ 7, 24-55.

### C.   "100% Natural" Has No Uniform Meaning

Plaintiff contends that consumers were misled by the term "100% Natural."  But it is well established that "natural" has no fixed meaning – it means different things to different people, and to some people means nothing at all.  58 Fed. Reg. 2302, 2407 (Jan. 6, 1993) (FDA: "consumers regard many uses of this term as noninformative"); 48 Fed. Reg. 23,270 (May 24, 1983) (FTC: "natural" means different things in different contexts); *see also Astiana v. Kashi Co.*, 291 F.R.D 493, 508 (S.D. Cal. 2013) ("food producers, consumers, and the [FDA] all fail to define 'natural' in any definite manner"); *see also Lockwood v. ConAgra Foods, Inc.*, 597 F. Supp. 2d 1028, 1034 (N.D. Cal. 2009).

Not surprisingly, the three named Plaintiffs in this action offer varying interpretations of the word.  Jones testified that it "means that the contents of the package contain products that come from nature."  Ex. D at 66.  But he believes that different consumers define the word in different ways, and, for him, it derives solely from his "brain" and "logic."  *Id.* at 67, 73.  He concedes that minerals such as salt (sodium chloride) are natural, and believes that food containing preservatives may also be natural.  *Id.* at 67, 69.  Sturges, in contrast, believes that "natural" means "no added chemicals," and for tomatoes would mean "just the tomato."  Ex. A at 103-04.  Ozard added yet a third definition:  a food is "natural" when it is "nonprocessed."  Ex. E at 96.  This testimony only confirms what FDA and courts have already determined:  there is no uniform meaning of the word "natural."

Plaintiff's experts agree.  In a prior declaration filed in this case, Dr. Scarbrough admitted that "natural" has "a variety of meanings" and depends on consumer expectations.  Dkt. 128-2 ¶ 8.  (Tellingly, Dr. Scarbrough omits this admission from his Hunt's declaration.)  And while Plaintiff's "food systems" expert, Dr. Caswell, is willing to opine that the term "natural" is material to consumers, she does not know what consumers think it means.  Ex. B at 112-15.  Caswell also says that "Free of Artificial Ingredients & Preservatives" is material, but her opinion as to both statements is based on nothing other than a "judgment call" – no scientific method or empirical work and no way to test her conclusion.  Dkt. 189-5 ¶¶ 27-28; Ex. B at 87, 90.  And the

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
MENLO PARK

- 7 -

OPPOSITION TO CLASS CERT. (HUNT'S)
CASE NO. 12-CV-01633-CRB

only relevant *evidence* Caswell has on the issue – her own food shopping experience – contradicts her supposed "expert" opinion.  Remarkably, Caswell testified that "natural" claims are *not important* to her purchasing decisions.  *Id.* at 116-17.[7]

## III.   DISCUSSION

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'"  *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2550 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)).  Departure from the usual rule requires that a putative class representative "affirmatively demonstrate" that he or she has met all of the requirements of Rule 23.  *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1432 (2013).  This requires plaintiffs to do more than generate common *questions*; plaintiffs must also show that litigation will produce a classwide *answer* to the common question.  *Wal-Mart*, 131 S.Ct. at 2551.  Rule 23 requires a court to "probe behind the pleadings" and to conduct a "rigorous analysis" of the evidence in support of and in opposition to the certification motion.  *Comcast*, 133 S.Ct. at 1432.

### A.   Plaintiff Lacks Standing

Before the Rule 23 factors are even analyzed, Jones fails a critical threshold inquiry:  he lacks standing to pursue the claims alleged.  "[A] class representative must be a part of the class and 'possess the same interest and suffer the same injury as the class members.'"  *General Telephone Co. of the Southwest v. Falcon,* 457 U.S. 147, 156 (1982).  Because Jones has made no showing of standing – and the evidence shows that he does not have standing – he cannot represent a class.  *See Lewis v. Casey,* 518 U.S. 343, 347 (1996) ("[N]amed plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent").

**No reliance:**  As discussed, Plaintiff seeks certification with respect to two distinct

---

[7] ConAgra objects to the Caswell Declaration on all grounds referred to herein and because it does not comply with minimum standards set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

labeling claims: "100% Natural" and "Free of Artificial Ingredients & Preservatives." Jones testified, however, that he did not rely on, or cannot recall relying on, those representations for any class period purchase. *Supra* at 2-3. These admissions are fatal. To have standing in a consumer fraud action based on allegedly false or misleading statements, Jones must plead and prove that he actually relied on the challenged label statements and that those statements caused him injury. *See Williamson v. The Reinalt-Thomas Corp.*, 2012 WL 1438812, at *8 (N.D. Cal. Apr. 25, 2012) (citing *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 326-27 (2011)). This is true under all three of California's consumer protection statutes – the UCL, the CLRA, and the FAL, *see id.* – and under all three prongs of the UCL – "fraudulent," "unfair," and "unlawful." *In re iPhone Application Litig.*, 2013 WL 6212591, at *6 (N.D. Cal. Nov. 25, 2013); *Figy v. Amy's Kitchen, Inc.*, 2013 WL 6169503, at *3-4 (N.D. Cal. Nov. 25, 2013); *Brazil v. Dole Food Co.*, 2013 WL 5312418, at *8-9 (N.D. Cal. Sept. 23, 2013).[8]

**"Illegal Products":** Jones's Complaint alleges that he "would not have purchased Defendant's Misbranded Food Products had [he] known they were not capable of being legally sold or held." SAC ¶¶ 238, 242. Even if this theory were viable, Jones could not assert it. Compliance with labeling law was *not a factor* in *his* purchasing decisions. Ex. D at 63. Nor would it matter to him if Hunt's tomatoes were illegal to sell or possess. *Id.* at 101. In any event, courts have repeatedly rejected this argument, holding that where an UCL unlawful violation is based on an allegedly misleading label representation, Plaintiff must plead and prove reliance on that representation. *Figy*, 2013 WL 6169503, at *3-4; *Wilson v. Frito-Lay N. Am., Inc.*, 961 F. Supp. 2d 1134, 1145 (N.D. Cal. 2013); *In re Actimmune Mktg. Litig.*, 2010 WL 3463491, at *7 (N.D. Cal. Sept. 1, 2010).

**No injury-in-fact:** Jones also lacks standing because he cannot establish the requisite

---

[8] Reliance is an element of unjust enrichment (to the extent such a claim exists) based on a challenged representation. *See Wood v. Motorola Mobility, Inc.*, 2012 WL 892166, at *10 (N.D. Cal. Mar. 14, 2012); *see also Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1070 (9th Cir. 2014) (denying class certification on unjust enrichment claim where class members not told same thing). Plaintiff does not appear to seek Rule 23(b)(3) certification on unjust enrichment, Mot. at 18, and any such attempt would fail because individual issues of reliance and damages would predominate. *Infra* at Section III.D.

1    injury.  In fact, after bringing the action, Jones continued to purchase tomato and other products

2    containing citric acid and calcium chloride, belying any claim that he was injured by the inclusion

3    of these ingredients in Hunt's.  *Supra* at Section II.A.  What is more, the Complaint alleges that

4    he paid a premium for Hunt's tomatoes, but Jones has no evidence.  He saved no receipts, he

5    cannot recall what he paid, and has no way of finding out.  Ex. D at 51, 53.  He acknowledges

6    variations in pricing, but cannot provide any specifics.  *Id.* at 51-52.  He has no factual basis to

7    believe that he paid more than the products were worth:  he could identify no comparable

8    products that were less expensive.  *Id.* at 36.  At the same time, Jones' own economic expert has

9    acknowledged that his Hunt's tomato models – essentially cut-and-paste copies of the models

10   submitted in support of the PAM and Swiss Miss motions – do not permit damages or restitution

11   awards to be made to any class member in the absence of purchase price information.  Ex. C at

12   93-95.  In short, Jones cannot establish that he paid a premium or prove any measurable damages.

13   Ugone Dec. ¶ 7, 24-55.

14          Jones' second theory – that his products were "misbranded" and thus "legally worthless"

15   (*e.g.*, SAC ¶¶ 1, 60, 86) – also fails to establish injury in fact.  His own testimony confirms that

16   the products had value to him:  he consumed them, enjoyed the taste and texture, and was a

17   satisfied customer for two decades – until he spoke with plaintiff attorney Sparky Lovelace.

18   Ex. D at 61, 101-02.  The products were not "worthless" in any sense of the word.

19          Finally, Jones asserts that he was "cheated out of honesty."  *Id.* at 33.  This is not a

20   cognizable injury.  Rather, the UCL, CLRA, and FAL require a loss of money or property – in

21   other words, an *economic loss*.  *See Williamson*, 2012 WL 1438812 at *8; *Kwikset*, 51 Cal. 4th at

22   323.  Jones provides no evidentiary basis for monetary recovery; he is thus foreclosed from

23   establishing injury-in-fact.

24          **Unpurchased products:**  Plaintiff claims to have bought (unspecified) varieties of Diced

25   Tomatoes and Tomato Sauce, but seeks to sue over dozens of different varieties, can sizes, and

26   segments that he never bought and labels he never read.  The Ninth Circuit recently confirmed

27   that a class representative must be a member of the class he seeks to represent.  *See Berger*, 741

28   F.3d at 1067.  Specifically, the court held that a plaintiff who signed one version of tool rental

Hogan Lovells US
LLP
Attorneys At Law
Menlo Park

- 10 -

OPPOSITION TO CLASS CERT. (HUNT'S)
CASE NO. 12-CV-01633-CRB

agreement could not bring class claims on behalf of others who signed different agreements. *Id.* The test is not whether the various tool rental agreements were substantially similar, but whether the plaintiff actually signed the different agreements.  As with the tool rental agreements in *Berger*, Hunt's labels presented different information at different times on differently constituted products – some had calcium chloride, some did not, some labels had a no artificial/preservatives statement, others did not, some said "100% Natural," others did not.  Jones cannot sue on behalf of those who bought different varieties.  *See, e.g.*, *Major v. Ocean Spray Cranberries, Inc.*, 2013 WL 2558125, at *4 (N.D. Cal. June 10, 2013) (typicality requirement failed where plaintiff sought to certify claims for products he did not buy); *Larsen v. Trader Joe's Co.*, 2012 WL 5458396, at *5 (N.D. Cal. June 14, 2012) (for non-purchased product, plaintiffs "could not have suffered a particularized injury as required by Article III"); *Lanovaz v. Twinings N. Am., Inc.*, 2013 WL 675929, at *2 (N.D. Cal. Feb. 25, 2013); *Hairston v. S. Beach Beverage Co.*, 2012 WL 1893818, at *5 n.5 (C.D. Cal. May 18, 2012).

## B.    Plaintiff Has Not Satisfied The Requirements of Rule 23(a).

### 1.    The Proposed Class Is Not Ascertainable

This Court has repeatedly recognized that Rule 23(a) requires plaintiffs not only to satisfy the four requirements of numerosity, typicality, commonality, and adequacy, but also to demonstrate that the proposed class is "ascertainable" – that the class as defined is both identifiable and definite.  *See Astiana v. Ben & Jerry's Homemade, Inc.*, 2014 WL 60097, at *1 (N.D. Cal. Jan. 7, 2014); *Diacakis v. Comcast Corp.*, 2013 WL 1878921, at *4 (N.D. Cal. May 3, 2013) (citing authorities); *Xavier v. Philip Morris USA, Inc.*, 787 F. Supp. 2d 1075, 1088-90 (N.D. Cal. 2011).  A class is not ascertainable unless membership can be established by means of objective, verifiable criteria.  *Xavier*, 787 F. Supp. 2d at 1089.  Nor is a class properly ascertainable where the definition sweeps in uninjured as well as injured members.  *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1018 n.5, 1024 (9th Cir. 2011).

**Uninjured class members:**  As defined, Plaintiff's proposed class includes *all* purchasers of the specified Hunt's tomato products – including those who, like Plaintiff, purchased for reasons other than reliance on the "100% Natural" or "Artificial/Preservatives" claims.  As is well

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
MENLO PARK

- 11 -

OPPOSITION TO CLASS CERT. (HUNT'S)
CASE NO. 12-CV-01633-CRB

understood in academic marketing literature, consumers purchase food products for a variety of reasons, many of which have nothing to do with label claims.  Declaration of Dominique Hanssens, Ph.D. ("Hanssens Dec.") ¶¶ 12-26.  These include price, product characteristics, brand, retail environment, product placement, and many others.  *Id.*  Clearly, some consumers buy Hunt's tomatoes because they like the taste or texture; others, like Plaintiff Sturges, buy them because their parents did (Ex. A at 70); others, like Plaintiff Jones, due to habit or brand loyalty (Ex. D at 52-54).  Still others buy based on *other* label information not challenged here, including perhaps label statements that Plaintiffs' counsel say were material (though they do not move to certify a class) including lycopene and "Flash-Steamed Freshness."  SAC ¶¶ 166, 183, 236.  Plaintiff's expert Caswell agrees.  She admits that consumers "receive product quality indicators and cues from a broad range of extrinsic sources including, for example, from labeling, price, and brand name," and identifies multiple product attributes unrelated to labels that influence purchasing decisions.  Dkt. 189-5 at ¶¶ 15, 22.  By definition, consumers who bought for reasons other than the challenged label statements cannot have been deceived or injured by the challenged labeling.  Yet Plaintiffs can offer no means of excluding such persons from the proposed class.

The proposed class here contains yet another category of uninjured persons – those who would not consider the challenged label statements misleading on products containing citric acid, calcium chloride, or both.  One consumer might find calcium chloride objectionable, but only have purchased a product containing citric acid.  Others may have purchased a can saying only "100% Natural" but consider the product natural even with citric acid and/or calcium chloride.  As noted, the word "natural" means different things to different people.  For many consumers, their definition of "natural" would permit one or both challenged ingredients – both of which are naturally sourced and permissible in organic foods.  *See* Section  II.B.  One court found such facts fatal to a plaintiff's labeling class claims: because consumers "often equate 'natural' with 'organic' . . . Class members' views of 'All Natural' may very well accommodate the presence of the challenged ingredients."  *Kashi*, 291 F.R.D. at 508.[9]  Such consumers cannot have been

---

[9] Jones testified that his "interpretation" of organic was that it was "more or less" the same as natural, but with additional requirements.  Ex. D at 91-92.

Hogan Lovells US LLP
Attorneys At Law
Menlo Park

OPPOSITION TO CLASS CERT. (HUNT'S)
CASE NO. 12-CV-01633-CRB

1    deceived by Hunt's natural label statements, yet the proposed class definition provides no means

2    to exclude them.

3          In *Stearns*, the Ninth Circuit confirmed that no such class may be certified.  655 F.3d at

4    1024.  It rejected a proposed class definition where it included both consumers who had been

5    deceived (*i.e.*, who did not realize they had been enrolled in a fee-based purchasing program) and

6    those who had not (*i.e.*, those who *did* realize they were enrolled but declined to purchase

7    products for reasons of their own).  Under *Stearns*, certification is permissible only if the class

8    definition itself, by means of objective criteria, screens out consumers who were not deceived.

9    Other circuit courts have reached the same conclusion.  *See Oshana v. Coca-Cola Co.*, 472 F.3d

10   506, 513 (7th Cir. 2006); *see also Diacakis*, 2013 WL 1878921, at *4 (the proposed class

11   included members irrespective of whether they were "deceived by Comcast's alleged failure to

12   disclose the existence of additional modem charges.  Since the proposed class includes persons

13   who were not injured in the same manner as Plaintiff, the proposed class is overbroad");

14   *Dioquino v. Sempris*, 2012 WL 6742528, at *5 (C.D. Cal. Apr. 9, 2012); *In re Countrywide Fin.*

15   *Corp. Mortg. Mktg. & Sales Practices Litig.*, 277 F.R.D. 586, 602 n.11 (C.D. Cal. 2011).

16         **No objective and verifiable criteria:**  The ascertainability requirement ensures that it is

17   "administratively feasible to determine whether a particular person is a class member." *Ben &*

18   *Jerry's Homemade, Inc.*, 2014 WL 60097 at *3.  Where "no good way to identify [the]

19   individuals" in the class exists, the class is not ascertainable.  *Xavier*, 787 F. Supp. 2d at 1089.

20   No good way exists here.  Consistent with Jones's own experience, consumers generally do not

21   save grocery receipts, and certainly not for a five-year period.  Ex. D at 51.  Nor can ConAgra

22   identify the ultimate purchasers of its products.  Nangle Dec. ¶ 5.

23         For these same reasons, Judge Conti recently denied certification in a similar food

24   mislabeling case, holding that "Plaintiff has yet to present any method for determining class

25   membership, let alone an administratively feasible method." *Sethavanish v. ZonePerfect*

26   *Nutrition Co.*, 2014 WL 580696, at *6 (N.D. Cal. Feb. 13, 2014); *see also In re POM Wonderful*

27   *LLC Mktg. and Sales Litig.*, 2014 WL 1225184, *6 (C.D. Cal. Mar. 25, 2014).

28         In this case, the ascertainability barrier to class certification is much greater than one

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
MENLO PARK

- 13 -

OPPOSITION TO CLASS CERT. (HUNT'S)
CASE NO. 12-CV-01633-CRB

1    based on a simple inability to recall or document individual purchases of the food product at

2    issue.  With Hunt's, there are literally dozens of varieties *with different can sizes, ingredients, and*

3    *labeling* over time.  These variations all bear directly on class membership.  And Jones vastly

4    complicates ascertainability problems by including claims based on two separate label statements

5    and two different ingredients.  Most consumers will never recall whether a can of Hunt's

6    tomatoes bore a particular label claim or included particular ingredients, and they will have no

7    way to find out.  *See Hernandez v. Chipotle Mexican Grill, Inc.*, 2013 WL 6332002, at *1 (C.D.

8    Cal. Dec. 2, 2013) (declining class certification, noting "the dispute concerns a very low price

9    transaction that neither the class members nor Chipotle maintain any specific record of or could

10   be expected to recall").

11          Jones cannot remember what varieties he purchased – much less when he bought or what

12   the labels said.  For example, he cannot recall if he bought Hunt's Whole Tomatoes.  Ex. D at 48.

13   Nor can he recall if he purchased Hunt's Crushed Tomatoes – he may have done so, but admits

14   that he may be confusing them with the Diced Tomatoes.  *Id.* at 55.  He bought Hunt's Tomato

15   Paste, but cannot remember if he did so during the Class Period.  *Id.* at 56.  With respect to

16   Hunt's Diced Tomatoes, Jones does not know what varieties, how much, or, critically, when he

17   bought, *id.* at 49-51 – necessary information given that different varieties lacked the

18   artificial/preservative language claim at different times within the Class Period.

19          Hunt's consumers would be unable to determine whether they meet the class definition,

20   and there will certainly be no way to test claims of those who may assert membership.  No class

21   should be certified where the court lacks a means to "verify that self-identified class members in

22   fact suffered the alleged injury (or more to the point, that consumers themselves might not be able

23   to honestly identify themselves even with proper notice)."  *Red v. Kraft Foods, Inc.*, 2012 WL

24   8019257, at *5 (C.D. Cal. Apr. 12, 2012) (tentative ruling; citing authority); 2012 WL 8018618

25   (Apr. 26, 2012) (adopting tentative ruling); *see also Xavier*, 787 F. Supp. 2d at 1089; *see also*

26   *Dioquino*, 2012 WL 6742528, at *6; *Carrera v. Bayer Corp.*, 727 F.3d 300, 305 (3rd Cir. 2013);

27

28

Hogan Lovells US
LLP
Attorneys At Law
Menlo Park

- 14 -

OPPOSITION TO CLASS CERT. (HUNT'S)
CASE NO. 12-CV-01633-CRB

1   *Marcus v. BMW of N. Am.*, 687 F.3d 583, 592-93 (3rd Cir. 2012).[10]

2   **2.      Plaintiff's Claims Are Not Typical**

3   Jones fails Rule 23(a)(3) typicality because he himself cannot assert the claims for which

4   he seeks certification.  *Stearns*, 655 F.3d at 1019-20 (district court properly rejected two proposed

5   representatives where one did not see challenged website statements and other was not deceived).

6   As discussed above, Jones lacks standing to bring the asserted claims.  *See* Section III.A.

7   **C.      Neither Plaintiff Nor His Counsel Are Adequate**

8   For the same reasons that he fails the typicality requirement, Jones is also not an adequate

9   class representative.  *See, e.g.*, *Kandel v. Brother Int'l Corp.*, 264 F.R.D. 630, 634 (C.D. Cal.

10   2010) (typicality and adequacy overlap).  Moreover, his testimony confirms he has handed the car

11   keys to his lawyers:  He did not review the initial complaint or the SAC before they were filed

12   (Ex. D at 104, 107); he was unaware that the initial complaint – filed in his name alone – sued

13   ConAgra for label representations on PAM cooking spray and Swiss Miss, when he never

14   purchased those products (*id.* at 46-47); he does not believe he has any obligation to ensure that

15   factual allegations in his pleadings are correct (*id.* at 132); he has no idea if the

16   "Artificial/Preservatives" label claim is false (*id.* at 82-83); and although his lawyers say calcium

17   chloride and citric acid are synthetic, he has no understanding of his own (*id.* at 76, 79).

18   Jones' counsel is inadequate, for all the reasons set forth in ConAgra's PAM class

19   certification opposition.  Dkt. 149 at 12-15.  In particular, counsel have misrepresented key facts

20   in the Amended and Second Amended complaints – a failing underscored in the context of the

21   proposed Hunt's class.  Most blatantly, counsel pled in the Complaint (multiple times in multiple

22   versions) that Jones read and relied upon the "100% Natural" and "Free of Artificial Ingredients

23   & Preservatives" claims; based on his sworn testimony, we now know this is untrue.  *Supra* at

24

25   _____

[10] Plaintiff is likely to rely on *Ries v. Arizona Beverages USA* (*Ries I*), 287 F.R.D. 523 (N.D. Cal.
26   2012) and *Astiana v. Kashi Co.*, 291 F.R.D. 493 (S.D. Cal. 2013), where courts certified classes
    despite concerns that consumers would not have proof of purchase.  Putting aside whether these
27   decisions are consistent with *ZonePerfect* and the other precedents cited above, neither addresses
    the crucial point that some Hunt's cans included the challenged language, while others included
28   no such language at all – and nothing suggests that consumers will be able to remember which
    they bought.  *Supra* at 2-3; Nangle Dec. ¶¶ 6, 11-14.

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
MENLO PARK

OPPOSITION TO CLASS CERT. (HUNT'S)
CASE NO. 12-CV-01633-CRB

II.A.  The falsehoods do not stop there.  The SAC alleges that certain lycopene and "Flash-Steamed Freshness" label claims were false and misleading, and that Plaintiffs relied on those statements in purchasing Hunt's.  SAC ¶¶ 166, 183, 234.  Plaintiff's deposition revealed, however, that no *factual basis ever existed for those claims*.  Jones had never even heard of lycopene before he spoke to counsel (Ex. D at 64) and never noticed any lycopene statement on any Hunt's tomato label until after he filed the lawsuit (*id.* at 65-66).  Nor does he recall seeing "Flash-Steamed Freshness" on Hunt's Tomatoes.  *Id.* at 91.  Plaintiff's counsel has chosen to ignore those claims now and try to certify a class typical of their remaining plaintiff candidate, rather than proceed with a plaintiff typical of the alleged class.  Proposed class counsel's decision to drop claims for certification does not remedy the baseless, Rule 11-violating fact allegations by Jones.

Basing their complaint on demonstrated falsehoods, counsel have created credibility issues for Jones and for themselves.  Both counsel and client should be ruled not adequate.  *See Friedman-Katz v. Lindt & Sprungli (USA), Inc.*, 270 F.R.D. 150, 160 (S.D.N.Y. 2010) ("the Court may consider the honesty and integrity of the putative class counsel[], as they will stand in a fiduciary relationship with the class"); *Williams v. Balcor Pension Investors*, 150 F.R.D. 109, 118-19 (N.D. Ill. 1993).

### D.   Plaintiff Has Not Satisfied The Requirements of Rule 23(b)(3)

Plaintiff seeks Rule 23(b)(3) certification of his CLRA and UCL claims, contending that common issues predominate, because reliance and damages can be determined on a classwide basis.  Plaintiff is wrong.

### 1.   Individual Issues of Reliance Predominate Over Common Issues

**CLRA.**  Jones contends that reliance may be presumed based on the purported materiality of the "100% Natural" and "Artificial/Preservatives" statements.  To establish materiality, Plaintiff relies on the testimony of Dr. Caswell.  But Caswell's opinion does not suffice.  As a legal matter, courts do not presume reliance – and no class may be certified – where *the question of what is material itself differs from one consumer to the next*.  As a matter of California law, a presumption of reliance is appropriate only where it is shown that there is "common evidence as

1    to what consumers perceived or what they would find material." *In re Vioxx Class Cases*, 180

2    Cal. App. 4th 116, 133 (2010) (quoting trial court and affirming denial of certification in the

3    absence of such evidence).  As the Ninth Circuit has stated in summarizing California law on this

4    point, "[i]f the misrepresentation or omission is not *material as to all class members*, the issue of

5    reliance 'would vary from consumer to consumer' and the class should not be certified." *Stearns*,

6    655 F.3d at 1022-23 (quoting *Vioxx*; emphasis added).  Jones fails to carry his burden to

7    demonstrate the materiality of the label statements he challenges – either as to himself, to other

8    Hunt's consumers, or to a hypothetical reasonable consumer.

9         Jones can offer no common proof that the class members bought Hunt's tomatoes in

10   reliance on the challenged label statements, as opposed to myriad other factors such as price,

11   promotions, retail positioning, taste, texture, or brand recognition.  Hanssens Dec. ¶¶ 12-26.

12   Absent evidence, the assumption that the challenged label statements were a factor in a given

13   purchase decision would be "speculative."  *Id.* ¶ 26.  But Caswell provides no testimony and no

14   *evidence* supporting a conclusion that the challenged statements, together or alone, are a factor in

15   all or even many consumers' Hunt's purchasing decisions.  *Id.* ¶¶ 38-46.  To the contrary,

16   Caswell acknowledges that (a) some percentage of consumers do not read food labels at all,

17   beyond the brand and type of food; (b) a consumer who never reads a label statement does not

18   factor that statement into purchasing decisions; (c) other consumers do not care about labeling

19   statements and would purchase products regardless of those labels, Ex. B at 191-93, 211; and (d)

20   "natural" claims are simply "*not important*" in her own purchase decisions.  *Id.* at 116-17.

21   Similar factors led this Court to deny certification of another putative consumer class:

22   "Materiality is an objective standard, but still, Plaintiffs will need to point to some type of

23   common proof, particularly given Defendant's arguments that people join Amateur Match for

24   many different reasons and for many different purposes."  *Badella v. Deniro Mktg. LLC*, 2011

25   WL 5358400, *9 (N.D. Cal. Nov. 4, 2011).  Plaintiff offers no common proof here.

26        The evidence shows that materiality is at best an individualized issue.  As noted above, the

27   term "100% Natural" has no fixed meaning – a point conceded even by Plaintiff and his experts.

28   Materiality accordingly cannot be demonstrated on a class-wide basis.  In *Kashi*, for example, the

Hogan Lovells US
LLP
Attorneys At Law
Menlo Park

- 17 -

OPPOSITION TO CLASS CERT. (HUNT'S)
CASE NO. 12-CV-01633-CRB

1  court denied class certification because plaintiffs "fail to sufficiently show that 'All Natural' has

2  any kind of uniform definition among class members, that a sufficient portion of class members

3  would have relied on the representation to their detriment, or that Defendant's representation of

4  'All Natural' in light of the presence of the challenged ingredients would be considered to be a

5  material falsehood by class members."  291 F.R.D. at 508; *see also Pelayo v. Nestle, USA, Inc.*,

6  2013 WL 5764644, at *5 (C.D. Cal. Oct. 25, 2013) (dismissing claims where "Plaintiff has failed

7  to allege either a plausible objective definition of the term 'All Natural' or her subjective

8  definition of the term 'All Natural' that is shared by the reasonable consumer"); Hanssens Dec.

9  ¶¶ 35-37.

10       As to "Free of Artificial Ingredients & Preservatives," record evidence affirmatively

11  rebuts materiality on a class-wide basis and precludes any presumption of reliance.  *See Mass.*

12  *Mut. Life Ins. Co. v. Super. Ct.*, 97 Cal. App. 4th 1282, 1294-95 (2002); *Laster v. T-Mobile USA,*

13  *Inc.*, 2009 WL 4842801 (S.D. Cal. Dec. 14, 2009).  Critically, ConAgra did not alter its prices to

14  retailers depending on whether or not the claim appeared on the label.  Nangle Dec. ¶ 8.  As Dr.

15  Hanssens explains, "[t]he marketing and economics literature tells us that consumers are willing

16  to pay more for a product feature that offers value to them."  Therefore Dr. Hanssens would

17  expect that ConAgra would have charged its retail customers a premium "if ConAgra considered

18  the claims to command a price premium."   Hanssens Dec. ¶¶ 28-29.  In short, the record

19  evidence does not support Caswell's opinion on materiality, and Caswell offers no evidence of

20  her own.  *See id.* ¶ 46.  With no admissible counter evidence on materiality from Plaintiff,

21  reliance remains an individualized and predominant issue, precluding certification. [11]

22       ***UCL and FAL.***  With respect to his UCL claim, Jones argues that he need not establish

23  absent class members' reliance *at all*.  Mot. at 18 (citing *In re Tobacco II Cases*, 46 Cal. 4th 298

24  (2009)).  He is incorrect.  *First*, subsequent authority holds that *Tobacco II*, which concerns

25  ─────────────────

26  [11] This case is therefore quite different from *Amgen, Inc. v. Connecticut Retirement Plans & Trust Funds*, 133 S.Ct. 1185 (2013), in which an adverse finding on materiality would have been made on a classwide basis and would have resulted in the failure of *all* class members' claims on the

27  merits.  In *Amgen* there was consequently no scenario in which the case could devolve into a series of mini-trials concerning the facts of each class member's transactions.  *Id.* at 1191.  Here,

28  however, that is exactly what would be required.

Hogan Lovells US
LLP
Attorneys At Law
Menlo Park

- 18 -

OPPOSITION TO CLASS CERT. (HUNT'S)
CASE NO. 12-CV-01633-CRB

1   *statutory standing*, does not remove the element of reliance from the class certification analysis.

2   *Tucker v. Pacific Bell Mobile Servs.*, 208 Cal. App. 4th 201, 227 (2012); *Cohen v. DirecTV, Inc.*,

3   178 Cal. App. 4th 966, 981 (2010) (on facts presented, "we find *Tobacco II* to be irrelevant

4   because the issue of 'standing' simply is not the same thing as the issue of 'commonality'").

5   Before and after *Tobacco II*, "[c]ourts in the Ninth Circuit and in California have regularly found

6   that where [individualized purchasing] inquiries predominate over common questions of law or

7   fact, courts may refuse to certify a class action." *Hodes v. Van's Int'l Foods*, 2009 WL 2424214,

8   at *4 (C.D. Cal. July 23, 2009) (considering *Tobacco II and* declining to certify class). Stated

9   simply, *Tobacco II* "does not stand for the proposition that causation and injury should be

10  inferred on a class-wide basis" in every case. *Campion v. Old Republic Home Prot. Co.*, 272

11  F.R.D. 517, 533 n.4 (S.D. Cal. 2011).

12          *Second*, *Tobacco II* contains an important further limitation.  Putative class representatives

13  may be relieved of the obligation to establish the standing of absent class members where all

14  consumers in the class have been exposed to *the same* challenged statements.  *Tobacco II*, 46 Cal.

15  4th at 324.  Otherwise, *Tobacco II*'s holding does not apply.  The Ninth Circuit has recognized

16  this limitation, stating "[w]e do not, of course, suggest that predominance would be shown in

17  *every* California UCL case," and observing that certification will be inappropriate where there is

18  "no cohesion among the members because they were exposed to quite disparate information."

19  *Stearns*, 655 F.3d at 1020 (emphasis added); *see also Faulk v. Sears Roebuck & Co.*, 2013 WL

20  1703378, at *9-10 (N.D. Cal. Apr. 19, 2013); *Campion*, 272 F.R.D. at 533 n.4; *Diacakis*, 2013

21  WL 1878921, at *8.  Here, consumers in the proposed class were not exposed to a uniform

22  statement.  To the contrary, Hunt's label statements differed by can size, variety, and time period,

23  and the ingredients that supposedly rendered the representations false differed too.  *Supra* at II.B.

24          *Third*, with respect to the "100% Natural" label statement, Plaintiff's claims do not satisfy

25  *Stearns*' requirement that there be "cohesion" among class members.  As discussed above,

26  "natural" has no fixed meaning.  Thus, even if the challenged statements were *facially* uniform,

27  consumers' *understanding* of those representations would not be.  On such facts, *Tobacco II* does

28  not eliminate the reliance requirement for absent class members.

Hogan Lovells US
LLP
Attorneys At Law
Menlo Park

- 19 -

OPPOSITION TO CLASS CERT. (HUNT'S)
CASE NO. 12-CV-01633-CRB

1    Nor is Plaintiff's "unlawful" theory an answer to the predominance barrier posed by

2    individual class members' need to establish reliance.  Mot. at 18.  For starters, Jones himself has

3    disavowed the "unlawful" theory as a factual matter, and cannot represent a purported UCL

4    unlawful prong class based on that theory.  Ex. D at 63, 101; Section III.A.  In any event, Plaintiff

5    rests his unlawful theory for this case entirely on *In re Steroid Hormone Product Cases*, 181 Cal.

6    App. 4th 145 (2010) – a case that has no bearing here.  In *Steroid Hormone*, the court presumed

7    materiality and reliance in connection with purchases of a bodybuilding drug mislabeled in such a

8    way that consumers did not know it contained a Schedule III substance.  *Id.* at 157.  In other

9    words, *Steroid Hormone* involved a consumer product that was "illegal" because of what it *was* –

10    a controlled substance unlawful to purchase without a prescription – rather than because of the

11    label it bore.  Given the vast differences between controlled substances and grocery products

12    whose labels are alleged to be inconsistent with technical regulations, *Steroid Hormone* is "a far

13    cry" from the claims asserted here.  *See Gitson v. Trader Joe's Co*., 2013 WL 5513711, at *6

14    (N.D. Cal. Oct. 4, 2013) (declining to presume that a reasonable consumer would not purchase

15    mislabeled food products).

16    Finally on this point, Jones also suggests no way in which he can establish a causal nexus

17    between supposed "unlawful" conduct and any claimed injury.  Alleged unlawfulness, by itself,

18    does not establish causation and injury.  And while Jones alleges that he paid a premium, neither

19    Plaintiff nor his purported expert can offer evidence of any premium, classwide or otherwise, paid

20    by class members *as a result* of the challenged label representations.  The only evidence on this

21    motion regarding a premium is Dr. Ugone's testimony that no premium exists.  *See*

22    Section III.D.2.

23    **2.    Individual Issues Concerning Damages and Restitution Predominate Over Common Issues**

24    Rule 23(b)(3) certification is improper unless a plaintiff establishes that damages are

25    "capable of measurement on a classwide basis."  *Comcast*, 133 S.Ct. at 1433.  "Common

26    questions of fact cannot predominate where there exists no reliable means of proving classwide

27    injury in fact. . . . No damages model, no predominance, no class certification."  *In re Rail*

Hogan Lovells US
LLP
Attorneys At Law
Menlo Park

- 20 -

OPPOSITION TO CLASS CERT. (HUNT'S)
CASE NO. 12-CV-01633-CRB

1    *Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 252-53 (D.D.C. 2013).  Plaintiff here relies

2    exclusively on economist Capps's opinion, but his Hunt's declaration (Dkt. 190-3) is a retread of

3    inadequate declarations offered in all Plaintiff's counsel's cases.  *See, e.g.*, Dkt. 128-7.

4         **Price Premium.**  Dr. Capps proposes two alternative ways to calculate damages under the

5    CLRA:  a "benefit of the bargain" calculation and a regression model.  Both methods require the

6    existence of a comparator product.  Capps Dec. (Dkt. 190-3) ¶¶ 13, 21; Ex. C at 153-54, 172.

7    Under both methods, the comparator product is used to calculate a percentage of overpayment (or

8    premium) associated with the "100% Natural" and/or "Artificial/Preservatives" statements.  Ex. C

9    at 139-42, 172-73.  After being repeatedly challenged for failing to identify a comparator in other

10   cases where he has advanced his rote theories (including as to the PAM products in this action),

11   Capps now purports to identify a single generic, store-brand tomato sauce as his long-missing

12   comparator.  Dkt. 190-3 ¶ 14.

13        As an initial matter, the lone product selected – a Safeway Kitchens tomato sauce – is not

14   a proper comparator even to just tomato sauces:  like the Hunt's product, it bears the 100%

15   Natural representation; and so it cannot (even under Capps's analysis) demonstrate any price

16   premium associated with that statement.  Ugone Dec. ¶¶ 33-34.  But his choice is also flawed

17   because while Hunt's is a market leader that has spent decades building a brand synonymous with

18   canned tomatoes, Safeway Kitchens is a generic store label only carried at Safeway stores.

19   Common sense and broadly accepted academic literature dictate that any "analysis" based on

20   such a comparison is deeply flawed.  *Id.* ¶¶ 37-38.  Capps' unexplained "understanding"

21   (Dkt. 190-3 ¶ 16) that the Safeway tomato sauce is comparable to Hunt's does not pass the smell

22   test.  Finally, identifying one (not comparable) "comparator" falls far short of establishing that his

23   model can work: "[G]iven the complexity of the Hunt's . . . product lines (e.g. large numbers of

24   segments and multiple flavors in a segment), it is not clear that suitable benchmark products exist

25   for each Challenged Product."  Ugone Dec. ¶ 35.  Capps speculates that comparable products "are

26   likely to be identified," Dkt. 190-3 ¶ 18, but nowhere says how many he would need, where he

27   hopes to find them, and why he has not been able to find anything to date.  Ugone Dec. ¶ 35.

28        Capps' proposed methodology suffers from other critical deficiencies.  *For one*, Capps

1 postulates that the difference between Hunt's and Safeway tomato sauce, on a particular day and

2 location that he happened to visit a store, provides a measure of the "premium" charged for

3 Hunt's.  He also assumes, without discussion, that that premium is solely attributable to the

4 presence of an Artificial/Preservatives statement on the Hunt's product – and not to the relative

5 strength of the brand, other label statements, or any other factor.  Dkt. 190-3 ¶ 14.  Judge

6 Pregerson of the Central District just rejected an identically indefensible theory:

> [Expert] Nolte simply observed that Pom's juices were more expensive than certain
> other juices.  Rather than answer the critical question why that price difference existed,
> or to what extent it was a result of Pom's actions, Nolte instead assumed that 100% of
> that price difference was attributable to Pom's alleged misrepresentations. . ..  Rather
> than draw any link between Pom's actions and the price difference between the four-
> juice average benchmark price and average Pom prices, the Price Premium model
> simply calculates what the price difference was.  This damages "model" does not
> comport with Comcast's requirement that class-wide damages be tied to a legal theory,
> nor can this court conduct the required "rigorous analysis" where there is nothing of
> substance to analyze.

12 *In re POM Wonderful*, 2014 WL 1225184, at *5.[12]  Indeed, in light of the premium typically

13 associated with name brands over generics, the price difference identified by Capps "provides no

14 guidance" as to any premium associated with the challenged label statements.  Ugone Dec. ¶¶ 32,

15 37-38.

16       *For another*, Capps admits that a hypothetical "overpayment" percentage cannot be

17 converted into an actual damages *award* for any class member unless it is multiplied by the

18 specific purchase price(s) the class member paid.  Ex. C at 89-90, 142.  But purchase prices

19 varied widely over the class period, depending on the circumstances in which the purchase was

20 made, including distribution channel, geographic location, retailer, time/date of purchase,

21 promotion, product variety/flavor, whether the consumer used a club card, and myriad other

22 factors.  Ugone Dec. ¶¶ 39, 62-71.  Capps' "weighted average" price measures would, at best,

23 produce only an average inflation measure, resulting in underpayment to some consumers and

24 windfalls to others (assuming injury and that other defects in Capps' models could be overcome).

25 Ugone Dec. ¶ 45, 80.  Contrary to Dr. Capps' assertion, then, "a 'weighted average price' across

26

---

27 [12] The *POM Wonderful* court found the opinion of this expert – who actually did more work in
attempting to find a reasonable benchmark product than did Dr. Capps, averaging four juice
competitors rather than simply choosing a single generic – inadmissible under *Daubert*.  *Id.* at *5
28 n.7.  So too is the opinion of Dr. Capps.

Hogan Lovells US
LLP
Attorneys At Law
Menlo Park

- 22 -

OPPOSITION TO CLASS CERT. (HUNT'S)
CASE NO. 12-CV-01633-CRB

1   retailers 'for any product on any given day' is not 'common to the class of purchasers.'  Rather,

2   individual inquiry is required to determine the purchase price paid by each individual Class

3   member. . . ."  *Id.* ¶ 25b.  Capps's model cannot provide class member purchase price

4   information; and Capps acknowledges that consumers will not be able to do so either.  Ex. C at

5   141-42.  Class certification should be denied on this basis too.  *Red*, 2012 WL 8019257, at *11

6   ("While the amount of [a] premium might be established on a class-wide basis . . . individual

7   class members, to recover, would need to show, at minimum, proof" of facts regarding their

8   purchases).

9       Meanwhile, actual evidence in this record shows that no premium exists.  *First*, ConAgra

10  does not vary the prices it charges to retailers based on presence or absence of label statements.

11  Nangle Dec., ¶ 8.  *Second*, based on actual sales data from Hunt's products sold during the class

12  period versus competitive brand name products, there is no premium for Hunt's products.  Ugone

13  Dec. ¶ 73.  "In fact, Hunt's products are generally priced lower than its branded competitors."  *Id.*

14  ¶¶ 73, 77.

15      Perhaps most importantly, Capps's work is incomplete and inadequate.  The "rigorous"

16  analysis required by Rule 23 cannot be satisfied where a damages expert "has done nothing to

17  confirm that his proposed approaches would be workable in [a given] case."  *Weiner v. Snapple*

18  *Beverage Corp.*, 2010 WL 3119452, at *8 (S.D.N.Y. Aug. 5, 2010); *see also Rail Freight*, 725

19  F.3d at 254 (certification inappropriate where "unsubstantiated claims [of damages model] cannot

20  be refuted").  Capps has done nothing to demonstrate that his model will work; indeed, he admits

21  that he has never actually used *any* model to calculate damages in a consumer protection case.

22  Ex. C at 203-04.  His back-of-the-napkin regression model lacks critical details.[13]  Ugone Dec.

23  ¶ 50.

24      Not surprisingly, district courts have declined to certify a class where plaintiffs relied on

25  Dr. Capps's opinion with respect to damages (or restitution).  *See Kottaras v. Whole Foods Mkt.*,

26

---

27  [13] Capps supplies no clearly defined list of variables, does not say what competing products he
    proposes to use, what complementary products he would use (or even what products would
28  qualify as complementary), what advertising he would look at, or the effect of promotional
    pricing.  Ugone Dec. ¶ 50.

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
MENLO PARK

- 23 -

OPPOSITION TO CLASS CERT. (HUNT'S)
CASE NO. 12-CV-01633-CRB

*Inc.*, 281 F.R.D. 16 (D.D.C. 2012); *Ogden v. Bumble Bee Foods, LLC*, 2014 WL 27527, at *13 (N.D. Cal. Jan. 2, 2014).  In *Kottaras*, as here, Capps had "not yet performed a single regression," making his methodology "tentative at best" and "too vague for the Court to even evaluate."  281 F.R.D. at 25-26.  And in *Kottaras*, as here, Capps acknowledged that calculating damages would "require[] individualized evidence such as receipts, credit card records, and scanner data capturing customer transactions" – an admission that largely undermined his opinion.  *Id.* Because Jones has submitted no *evidence* demonstrating that Capps's model would produce reliable damages figures for the class, Rule 23(b)(3) certification is improper.

   ***Restitution.***   Under the UCL, monetary recovery is limited to restitution.  *Vioxx*, 180 Cal. App. 4th at 135.  Dr. Capps's proposed restitution "model" neither comports with California law nor shows that restitutionary relief may be determined on a classwide basis.  His opinion rests on the premise that restitution could be awarded by returning to each class member the purchase price he or she spent on Hunt's.  Dkt. 190-3 ¶ 8.  This is inconsistent with governing UCL law. Restitution must be measureable to be awarded, and where a challenged product is alleged to be worth less than what consumers paid, restitution is measured by *the difference* between the amount paid and the product's true worth.  *Vioxx*, 180 Cal. App. 4th at 131; *In re Facebook, Inc., PPC Adver. Litig.*, 282 F.R.D. 446, 461 (N.D. Cal. 2012).

   Capps's model is flawed because it assumes that restitution here can require return of the entire Hunt's purchase price.  "Dr. Capps' proposed approach does not take into account the value actually received by putative Class members from the purchase and use of the Challenged Products."  Ugone Dec. ¶ 7.1.a.  Capps apparently bases this measure on an assumption about the "legal worthlessness" of Hunt's products, Ex. C at 91, 101, but acknowledges that a product he assumes mislabeled is *not* "economically worthless" to class members.  Ex. C at 91.  The law is in accord: Judge Seeborg recently rejected the proposition that UCL restitution can be equated with return of full purchase price, and held that an allegedly improper "natural" claim does not render a product worthless.  *See Ries v. Arizona Beverages US LLC (Ries II)*, 2013 WL 1287416, at * 7-8 (N.D. Cal. Mar. 28, 2013); *see also* Ugone Dec. ¶ 25a.  Finally, Capps throws out two other possible measures:  return of the wholesale price received by ConAgra or ConAgra's net profits

1   (the so-called "restitutionary disgorgement").  But neither bears any correlation to any economic

2   injury suffered by class members.  *Id.* ¶¶ 27-28.  In short, Capps's restitution analysis is

3   irrelevant, inadmissible under *Daubert*, and insufficient in all events to support certification.  *See*

4   *Ogden*, 2014 WL 27527, at \*13.[14]

5          **E.     This Case Cannot Be Certified Under Rule 23(b)(2)**

6          Plaintiff's bid for certification under Rule 23(b)(2) also fails.  First, Plaintiff's failure to

7   satisfy Rule 23(a)'s requirements of ascertainability, typicality, and adequacy is fatal under

8   Rule 23(b)(2).  Second, no class may be certified under Rule 23(b)(2) where a plaintiff seeks

9   monetary relief, except possibly in cases where such relief is purely incidental to injunctive relief.

10  *Wal-Mart*, 131 S.Ct. at 2557.  That is not the case here, and Plaintiff does not claim it is.[15]

11         Finally, no Rule 23(b)(2) class should be certified because Jones lacks standing to seek

12  injunctive relief.  He no longer buys Hunt's.  Ex. D at 138.  Nor has he alleged any intent to do so

13  in the future.  Because there is thus no "likelihood of future injury" for Jones, he is barred from

14  seeking injunctive relief.  *Hodgers–Durgin v. de la Vina*, 199 F.3d 1037, 1044-45 (9th Cir. 1999);

15  *see also Rahman v. Mott's LLP*, 2014 WL 325241, \*10 (N.D. Cal. Jan. 29, 2014) ("to establish

16  standing [for injunctive relief], plaintiff must allege that he intends to purchase the products at

17  issue in the future," dismissing injunctive relief demand on that basis); *Jou v. Kimberly-Clark*

18  *Corp.*, 2013 WL 6491158, at \*4 (N.D. Cal. Dec. 10, 2013) (same); *Moheb v. Nutramax Labs.,*

19  *Inc.*, 2012 WL 6951904, at \*6 (C.D. Cal. Sept. 14, 2012).

20  Dated:  April 11, 2014                HOGAN LOVELLS US LLP

21

22                                        By:   /s/ Robert B. Hawk
                                                Robert B. Hawk
23                                              Attorneys for Defendant
                                                ConAgra Foods, Inc.

24

25  ───────────────
    [14] Capps also admits that a restitutionary award in the absence of purchase price information
26  would be "inappropriate," undercompensating some consumers and overcompensating others, he
    cannot supply that information.  Ex. C at 93-94.

27  [15] Plaintiff relies on *Ries I*, but there, Judge Seeborg only certified a (b)(2) class after excising
    plaintiffs' claims for monetary relief, then subsequently decertified that (b)(2) class.  *Ries II*, 2013
28  WL 1287416.